**GENERAL INSTRUMENT CORPORATION,**
Plaintiff,

v.

**TIE MANUFACTURING, INC.,**
Defendant.

No. 81 Civ. 2119–CLB.

United States District Court,
S. D. New York.

July 14, 1981.

Rhona Schlieman, Gene Bauer, New York City, for plaintiff.

Rivkin, Sherman & Levy by Thomas A. Greene, Mary Christine Carty, New York City, for defendant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Defendant in this diversity case brought to recover for goods sold and delivered, moves to dismiss pursuant to Rule 12(b)(2), F.R.Civ.P., for want of *in personam* juris-

diction in this Court based upon service of process upon the Secretary of State of New York or possible "long-arm" service in Connecticut. For reasons set forth below, the Court concludes that the service was ineffective, and that *in personam* jurisdiction in this District cannot be obtained.

In the interests of justice, rather than dismiss this case, it is hereby transferred to the District of Connecticut, pursuant to 28 U.S.C. § 1406(a).

Plaintiff is a Delaware corporation having its principal office in this District. Defendant is a Connecticut corporation, having its principal office at Shelton, Connecticut. The action is to recover $556,579. for goods sold and delivered by plaintiff to defendant, consisting of certain electrical components, known as "mosfets".

The contract sued upon arose as a result of initial discussions in Connecticut followed by interstate telephone calls as well as interstate letters, purchase orders and acknowledgements exchanged by mail. Claiming to be a winner of the customary "battle of the forms," plaintiff seeks, *inter alia*, to found *in personam* jurisdiction in this Court by reason of a forum selection clause and consent to jurisdiction buried in the fine print of its "acknowledgements" of the purchase orders, quoted below. Alternatively, plaintiff founds jurisdiction on § 301 New York C.P.L.R. or on § 302(a) thereof.

The goods sold were required to be and were shipped via an interstate common carrier, from the plaintiff's plant in the Eastern District of New York to defendant's plant at Shelton, Connecticut, or to its affiliate in Taiwan. All payments were made by checks drawn in Connecticut and mailed to New York. Defendant or its representatives in the making of the contract never came into the State of New York, nor took the benefit of its laws. *Cf. Mendelson v. Fleischmann*, 386 F.Supp. 436 (S.D.N.Y. 1973) and cases therein cited.

■ Upon the papers submitted on this motion, the record is clear that defendant is not "doing business" in New York within the meaning of New York C.P.L.R. § 301. It has no regular or systematic contacts with New York, and has no office or general agents here. Nor can reliance properly be placed on § 302(a) of the New York C.P.L.R. There was no single, purposeful act by defendant in New York in connection with the making of the contract. The contract sued on resulted solely from telephone calls and interstate exchange of correspondence and personal visits by plaintiff's salesmen to Connecticut. This is insufficient contact to provide a basis for *in personam* jurisdiction in New York. *See Total Sound, Inc. v. Universal Record Distributing Corp.*, 286 F.Supp. 123, 125 (S.D.N.Y. 1968), applying New York law, and *Galgay v. Bulletin Company, Inc.*, 504 F.2d 1062, 1066 (2d Cir. 1974).

In an attempt to resolve a subsequent dispute about claimed defects, representatives of the defendant did come into New York State and held discussions with the plaintiff. The Court concludes, however, that the contract was already made, and attempts thereafter to compromise or adjust a dispute as to performance are not sufficient to confer *in personam* jurisdiction upon the courts of New York with respect to a pre-existing contract over which no jurisdiction existed prior to the settlement attempts. Indeed, it is doubtful that these discussions would even be admissible in evidence, in view of Rule 408, F.R.Evid. The Court declines to found *in personam* jurisdiction on these settlement meetings.

This then leaves us with the sole basis for *in personam* jurisdiction to be found in the outcome of the "battle of the forms."

Defendant's purchase order No. 10836 was issued September 22, 1980 and mailed by defendant to plaintiff. That purchase order, by clause 21 of its own fine print, provided that it "shall be governed by and interpreted in accordance with the laws of the State of New York." As this is a sale between merchants and the Uniform Commercial Code is in effect in both states, this point would seem of no significance. The purchase order also provided for acceptance in writing within fifteen days, with the following provisions:

"No changes or modifications are to be made without Buyer's [defendant's] written consent. *Buyer is not bound by any provisions, printed or otherwise, at variance with this order that may appear on any acknowledgment form used by Seller.*" (Emphasis added).

On August 1, 1980, plaintiff issued a written "Acknowledgment" of the order on its own printed form, which provided for billing to Shelton, Connecticut, and shipment of the goods to Taiwan. This acknowledgment form, and later such forms sent by plaintiff contained a printed condition on their face as follows: "Thank you for your order which is accepted subject to the terms and conditions on the reverse side of this acknowledgment."

These printed terms and conditions contain 22 separate paragraphs. Paragraph 1 of these terms and conditions provided that:

"Buyer's failure to object to any of these Terms of Sale in writing prior to the commencement of performance by Seller or the acceptance of any of the goods or services described on the front hereof shall be conclusively deemed to be acceptance of all these Terms of Sale. * * Seller's failure to object to terms contained in any communication from Buyer shall not be deemed to be a waiver of these Terms of Sale."

Thereafter, buried in small print in paragraph 17, and barely readable, the Seller provided, under the heading "Governing Law," as follows:

"The validity, construction and performance of this contract and the transactions to which it relates shall be governed by the laws of the State in which the chief executive offices of the Seller are located, without regard to conflict of laws principles. All actions, claims or legal proceedings in any way pertaining to this contract or such transactions shall be commenced and maintained in the courts of such State or in a federal court of the United States physically situated in such State, and in no other court or tribunal whatsoever, *and the parties hereto agree to submit themselves to the jurisdiction of such court.*" (Emphasis added).

Needless to say, the Purchaser did not object to any of the Seller's fine print, nor did the Seller object to any of the Purchaser's fine print. This was a contract between merchants within the meaning of the Uniform Commercial Code. Each merchant had his mind on the mosfets and not on the fine print. There is no evidence that the forum for resolution of disputes was discussed at the time the contract was made.

But, the inevitable dispute arose; the goods were rejected in part for claimed defects, and payment refused for those rejected.

The best analysis of the effect of this sort of exchange of paper is found in Judge Gabrielli's opinion for the New York Court of Appeals in *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239 (1978). In that case there had been no discussion of any method of dispute resolution at the time of the sales effort, which had resulted in a purchase order by Marlene for certain fabrics from Carnac. Marlene sent Carnac a "purchase order" and Carnac sent Marlene an "acknowledgment of order." Judge Gabrielli describes the "battle of the forms" in that case as follows (p. 411 of 408 N.Y. S.2d p. 240 of 380 N.E.2d):

"Marlene's form did not provide for arbitration; it did declare that it would not become effective as a contract unless signed by the seller, and that its terms could not be 'superceded by a[n] unsigned contract notwithstanding retention'. Carnac's form, on the other hand, contained an arbitration clause placed in the midst of some 13 lines of small type 'boilerplate'. It also instructed the buyer to 'sign and return one copy of this confirmation'. However, neither party signed the other's form. When a dispute subsequently arose, Carnac sought arbitration, and Marlene moved for a stay."

The Court went on to hold (p. 411 of 408 N.Y.S.2d, p. 240 of 380 N.E.2d):

"This case presents a classic example of the 'battle of the forms', and its solution is to be derived by reference to section 2–207 of the Uniform Commercial Code, which is specifically designed to resolve such disputes.

. . . . . .

[T]he merchant rule of section 2–207(2) is for use in determining what are the terms of an admitted agreement. . . . .

Subdivision (2) of section 2–207 [of the UCC] is applicable to cases such as this, in which there is a consensus that a contract exists, but disagreement as to what terms have been included in that contract. Subdivision (1) of section 2–207 was intended to abrogate the harsh 'mirror-image' rule of common law, pursuant to which any deviation in the language of a purported acceptance from the exact terms of the offer transformed that 'acceptance' into a counter-offer and thus precluded contract formation on the basis of those two documents alone [citation omitted]. Under subdivision (1) of section 2–207, however, an acceptance containing additional terms will operate as an acceptance unless it is 'expressly made conditional on assent to the additional or different terms'. Having thus departed from the common-law doctrine, it became necessary for the code to make some provision as to the effect upon the contract of such additional terms in an acceptance. Subdivision (2) was designed to deal with that problem.

Before continuing, we would note that the section speaks of both acceptances and written confirmations. It is thus intended to include at least two distinct situations: one in which the parties have reached a prior oral contract and any writings serve only as confirmation of that contract; and one in which the prior dealings of the parties did not comprise actual formation of a contract, and the writings themselves serve as offer and/or acceptance. In either case the writing or writings may contain additional terms, and in either case the effect of such additional terms under the code is the same. Thus, on this appeal, since the prior discussions of the parties did not reach the question of dispute resolution, it is unnecessary to determine whether those discussions rose to the level of contract formation, or whether no contract was created until the exchange of forms. Therefore, whether Marlene's form is an offer and Carnac's an acceptance, or whether both are mere confirmations of an existing oral contract, the result in this case is the same, and that result is dependent upon the operation of subdivision (2) of section 2–207.

Subdivision (2) of section 2–207 provides that any additional terms in an acceptance or a written confirmation are to be considered merely proposals for additions to the contract, and that such terms normally will not become a part of the contract unless expressly agreed to by the other party. As with many sections of the code, however, there is a special provision for merchants:

'(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

'(a) the offer expressly limits acceptance to the terms of the offer;

'(b) they materially alter it; or

'(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.' (Uniform Commercial Code, § 2–207, subd. [2]).

The parties to this dispute are certainly merchants, and the arbitration clause is clearly a proposed additional term, whether Carnac's form be considered an acceptance of an oral or written offer or a written confirmation of an oral agreement. As such, it became a part of the contract unless one of the three listed exceptions is applicable. We hold that the inclusion of an arbitration agreement materially alters a contract for the sale of goods, and thus, pursuant to section 2–207 (subd. [2], par. [b]), it will not become a part of such a contract unless both parties explicitly agree to it." (Footnotes omitted).

Thereafter, in *National Machinery Exchange, Inc. v. Peninsular Equipment Corp.,*

106 Misc.2d 458, 431 N.Y.S.2d 948 (Sup.Ct., N.Y.Co., 1980), another case characterized by its author as "this almost classic battle of the forms," the court, relying on *Marlene Industries*, declined to enforce, as a material alteration, a forum selection clause in a confirmation of sale or invoice sent by a New York seller to a Michigan purchaser agreeing to jurisdiction in the New York courts. While the decision in *National Machinery Exchange* notes that "the clause in issue would require the defendant to defend a claim half a continent away from its home base in a jurisdiction whose law may differ markedly from that of its home," the court cannot perceive this dictum as supporting any rationale which would make the clause effective because not material, if the forum state adjoins the state of the objecting party, but ineffective and material if the place of trial would be "half a continent away." For all that appears, the law of sales is not markedly different in Michigan than it is in New York or Connecticut.

The issue here is essentially one of New York law under the Uniform Commercial Code § 2–207(2), and this Court believes that the Court of Appeals of New York, which decided *Marlene Industries*, would treat any clause sought to be imposed by the "battle of the forms," which would vest subject matter jurisdiction solely in a New York court as proposing a material alteration and therefore ineffective under UCC § 2–207(2).

In *Marlene* the clause objected to proposed that the parties give up their access to the courts of any state, and proceed before a private arbitration tribunal. In this case, the clause proposes that defendant is required to give up the right it would otherwise enjoy, to be sued where it is doing business, or in the state of its principal office, and consent to be sued in an adjoining state. A reasonable merchant would probably regard this as a material alteration.

There are still subtle differences between the courts in various states. Certainly the jurors are selected from different economic, political and social backgrounds, which may affect their attitudes even in commercial matters. Counsel other than the party's regular attorney may be needed, at additional expense. The bench and bar has always regarded choice of forum as a significant right. The Court, as a matter of common sense would regard the injection of a choice of forum clause as a proposal for a material alteration in the contract, and believes that while the argument is not as strong as in the case of an arbitration clause, the rationale is the same. In the words used in *Marlene* with respect to arbitration, a party, by agreeing to such a change, "waives in large part many of his normal rights under the procedural and substantive law of the state, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent."

Because there is no factual basis for *in personam* jurisdiction in New York and because I find the choice of forum clause materially alters the contract within the meaning of New York UCC § 2–207(2) and therefore never became part of the agreement of the parties, the motion is granted to the extent of transferring the action of the District of Connecticut.

The Clerk of this Court shall comply with Rule 27 of the Civil Rules of this Court.

So ordered.