CONTINENTAL FIELD SERVICE
CORPORATION, Plaintiff,

v.

ITEC INTERNATIONAL,
INC., Defendant.

No. 94 Civ. 8953 (BDP).

United States District Court,
S.D. New York.

July 27, 1995.

Robert L. Brinton, White Plains, NY, for plaintiff.

Lisa M. Gigliotti, New York City, for defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiff, Continental Field Services Corporation ("CFS") charges Defendant ITEC International Inc. ("ITEC") with breach of contract. Before the Court is Defendant's motion pursuant to Fed.R.Civ.P. 12(b)(2) to dismiss the complaint for lack of personal jurisdiction. For the reasons set forth, Defendant's motion is granted.

### FACTS

ITEC is a United States Virgin Islands Foreign Investment Sales Corporation. It maintains an office in Huntsville, Alabama. Plaintiff is a Delaware corporation with its principal place of business in New York.

■ ITEC, pursuant to an agreement with the Venezuela telephone company ("CANTV"), undertook to install a nationwide telephone system in that country. To that end, in July 1993, ITEC entered into an subcontract with Telecomunicaciones–Continental Field Services ("TCFS"), whereby TCFS would provide services and equipment for the CANTV project. While the terms of the purchase order agreement did not specify where payment would be made[1], ITEC agreed orally to accommodate TCFS by wiring funds to an account in the name of Continental Field Service with Marine Midland Bank in New York. Apparently, TCFS was a subsidiary of CFS, but the extent of ITEC's awareness of CFS's relationship to TCFS as it existed throughout contract negotiations and as it exists is subject to some dispute.[2] All communications relating to the

---

1. The purchase order, does however state that all invoices were to be wired to ITEC's international place of business in Huntsville, Alabama.

2. In his affidavit, Garvin Morris, ITEC's General Counsel states "[n]either I, nor to my knowledge any other representative of ITEC International has any personal knowledge as to what connection/relationship if any exists between Continental and TCFS." In fact, Morris claims that it was not until ITEC stopped making payments that he learned of the possible connection between TCFS

and plaintiff. See note 3, infra. Moreover, Leon Callahan, ITEC's former Vice President of the CANTV project states in his affidavit that "[n]either I nor any other ITEC employee of ITEC International responsible for the work performed under this purchase order ever had any communications with any subsidiary or affiliate of TCFS located in the state of New York.

By contrast CFS Vice President Michael Hill claims that ITEC was well aware of the TCFS/CFS relationship. He notes that in 1992, CFS controller Patrick Mcintyre shared an office in

contract took place in Caracas, Venezuela. According to the complaint, TCFS completed all work on the project as of July 1993; however, in September 1993, ITEC stopped making payments.[3] On December 1, 1994, CFS filed a complaint based on ITEC's alleged breach of the Venezuelan agreement. With respect to jurisdiction, paragraph 5 of the Complaint states that "that Defendant is subject to personal jurisdiction in this judicial district."

## DISCUSSION

■ In diversity actions, the reach of the Court's personal jurisdiction is, of course, determined by New York law. *Arrowsmith v. United Press International*, 320 F.2d 219 (1963). The burden of proving jurisdiction is on the party asserting it. *Lehigh Valley Industries Inc. v. Birenbaum*, 527 F.2d 87, 92 (2d Cir.1975). In the absence of an evidentiary hearing, plaintiff must show through pleadings and affidavits that jurisdiction exists. *CutCo Industries v. Naughton*, 806 F.2d 361, 364 (2d Cir.1986).

■ CFS asserts that jurisdiction is proper under the "transaction of business" provision of the New York long-arm statute. CPLR § 302(a)(1).[4] This section authorizes the exercise of personal jurisdiction over a nondomiciliary who in person "or through an agent transacts any business within the state "provided that there is some articulable nexus between the business transacted and the [claim]" *Beacon Enterprises Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir.1983).

■ Although the test for transacting business under § 302(a)(1) in contract actions can be somewhat imprecise, significant factors typically include: defendant's physical presence in New York, the extent of negotiations in New York and whether the contract was performed in New York. See *Berk v. Nemetz*, 646 F.Supp. 1080, 1084 (S.D.N.Y. 1986). Underlying these factors, however, is the central question of whether the defendant has performed purposeful acts in New York in relation to the contract. *A.C.K. Sports v. Doug Wilson Enterprises*, 661 F.Supp. 386, 389 (S.D.N.Y.1987). See also *CutCo Industries*, 806 F.2d at 365 (2nd Cir. 1986).

Here, ITEC has directed little activity to New York. First, ITEC has no physical presence here: it owns no property in New York, it has neither offices nor employees in

Venezuela with Leon Callahan and that they were "gringos working in a Spanish speaking country where English was rarely heard." According to Hill, on various occasions, Callahan told McIntyre that he preferred dealing with U.S. based companies. Finally, Hill states that McIntyre had told Callahan that CFS was forming TCFS.

A problem posed by considering these facts is that Hill has established no firsthand knowledge of them. See *Kamen v. American Telephone & Telegraph*, 791 F.2d 1006, 1010 (2d Cir.1986). Moreover, while the general rule in this Circuit favors limited discovery which may ultimately establish the truth of plaintiff's contentions or may provide a further factual basis for jurisdiction, plaintiff has failed to make a threshold showing of jurisdictional significance of its contentions or any suggestion that defendant is in possession of further facts which may resolve the jurisdictional issue. See *Kamen*, 791 F.2d at 1010; *Farkas v. Ellis*, 783 F.Supp. 830, 832 (S.D.N.Y.1992).

Hill, however, does contend that he was present at a dinner in Caracas during which he informed ITEC's Vice President that CFS was the parent corporation of TCFS. Hill also asserts that CFS executives provided ITEC with business cards and brochures which bore a New York address. These facts, if accepted, would not establish personal jurisdiction. See pp. 5–6, infra.

3. According to a letter from Morris to Plaintiff's counsel dated September 29, 1994, the Venezuelan Government issued a moratorium on foreign currency transactions in June, 1994. The moratorium apparently prevented CANTV from paying ITEC, and ITEC, in good faith, stopped payment on the project. According to Morris's Affidavit, his letter was simply a response to a letter from plaintiff's counsel which he contends was the first time he learned that TCFS was a wholly owned subsidiary of CFS.

4. It is clear from the record that ITEC's relationship with New York does not amount to doing business under C.P.L.R. § 301. ITEC does not maintain any offices, employees, agents, distributors, service personnel, bank accounts, mailing addresses, post office boxes or local telephone numbers within the state of New York. ITEC does not use, own or possess any real property in the State of New York. ITEC does not pay income or property taxes within the state of New York. None of ITEC's officers or employees have ever visited the State of New York for business purposes.

New York and it neither transacts nor solicits business in New York. Second, as the record indicates, all contract negotiations took place in Caracas, Venezuela. Third, performance under the contract took place primarily in Venezuela since all of the work was done in Venezuela by Venezuelans. Defendant's only contact with New York was its wiring of payments at TCFS' request to a Marine Midland bank account in New York. However, this passive accommodation does not establish the requisite purposeful activity to justify jurisdiction. See *Colson Services Corp. v. Bank of Baltimore*, 712 F.Supp. 28, 31 (S.D.N.Y.1989) (holding that defendant's wiring of funds at request of plaintiff is insufficient to establish jurisdiction); See also *The Golden Budha Corp. v. the Canadian Land Company of America*, 1989 U.S. Dist. LEXIS 13591 (S.D.N.Y.1989).

■ In its attempt to connect further the ITEC/TCFS contract with the State of New York, plaintiff argues that ITEC was aware during contract negotiations that TCFS was a subsidiary of CFS—a New York Corporation. In support, plaintiff makes much of a dinner in Caracas prior to the execution of the contract. At that dinner, Michael Hill Vice President of CFS, told Leon Callahan, ITEC's Vice President, that TCFS was a CFS subsidiary and then presented him and other ITEC executives with business cards and brochures which identified CFS as having a New York address. According to Hill, ITEC executives informed him that they would forward the brochures to their offices in Huntsville Alabama. ITEC disputes this version of events. Nonetheless, even viewing this version of events in a light most favorable to plaintiff, see *Hoffritz for Cutlery v. Amajac*, 763 F.2d 55, 57 (2d Cir.1985), we find that ITEC's purported knowledge of plaintiff's parent's physical presence in New York does not establish the purposeful availment of the laws of New York necessary for jurisdiction. See *A.C.K. Enterprises Inc.*, 661 F.Supp. at 390 (finding no jurisdictional basis for lawsuit even where plaintiff was unquestionably a New York corporation).

■ Finally, as a basis for personal jurisdiction, plaintiff looks to two letters from Morris to plaintiff's counsel which attempted to resolve the nonpayment problem. The first appears to respond to a letter from plaintiff's counsel to ITEC's president dated September 19, 1994. The second responds to another letter from plaintiff's counsel and informs him that Senior Management has authorized that ITEC pay CFS $5,000 per month. Plaintiff suggests that the letters constitute transacting business. We disagree.

ITEC's forwarding a letter to New York in response to a letter from a New York address does not indicate ITEC's purposeful availment of benefits and obligations of transacting business in New York. While acts performed by a defendant subsequent to the execution of a contract can be of jurisdictional consequence, the attempts here to resolve a dispute under a contract made and performed elsewhere do not translate into jurisdictional contacts. *CutCo*, 806 F.2d at 368.

### CONCLUSION

Based on the foregoing, Defendant's motion to dismiss is granted. The Clerk is directed to enter judgment in favor of Defendants.

**SO ORDERED.**