SLAPSHOT BEVERAGE COMPANY,
INC., a corporation, Plaintiff,

v.

SOUTHERN PACKAGING MACHINERY,
INC., Defendants.

No. 97 CV 1242(ADS).

United States District Court,
E.D. New York.

Oct. 10, 1997.

Kolodny & Griffin by Timothy G. Griffin, Michael J. Mascola, Yonkers, NY, for Plaintiff.

Leader & Berkon by Lisandra Acosta, New York, NY, for Defendant.

Silfen, Segal, Fryer & Shuster, P.C., Atlanta, GA, for Defendant; William R. Lester, of counsel.

SPATT, District Judge.

This diversity-breach of contract action arises from the claims of the plaintiff, Slapshot Beverage Company, Inc. ("the plaintiff" or "Slapshot") against the defendant, Southern Packaging Machinery, Inc. ("the defendant" or "SPI") to recover damages for the alleged delivery of bottling equipment that was different from that specified in the sales contract. Presently before the Court is the defendant's motion to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

Defendant SPI is a corporation organized under the laws of the State of Georgia, and is engaged in the business of brokering and selling used and reconditioned packaging machinery and equipment. SPI's principal place of business and sole office is located in Lawrenceville, Georgia. The plaintiff, Slapshot Beverages, was incorporated in the State of Florida, and is in the business of manufacturing, packaging and selling alcoholic beverages to distributors throughout the United States. From the time of its incorporation in October of 1993, through October of 1995, Slapshot's principal place of business was in Royal Palm Beach, Florida.

In July of 1995, Slapshot contacted SPI inquiring about a used packaging machine for use in its beverage business. SPI, in turn, contacted Hinkel & Associates ("Hinkel"), a used equipment broker located in Arden, North Carolina, and ascertained that Hinkel could obtain a packaging machine suitable for Slapshot's use. All negotiations of the purchase and sale of the machinery at issue took place between Slapshot's office in Royal Palm Beach, Florida, and SPI's office in Lawrenceville, Georgia. On July 31, 1995, Slapshot wired the agreed-upon purchase price of $31,800.00 to SPI's Georgia bank account. Pursuant to Slapshot's instructions, SPI arranged for the shipment of the machinery by Hinkel in North Carolina to Union Grove, Wisconsin, where another company, Systematics, Inc., was to modify the equipment according to Slapshot's specifications.

After the equipment was delivered to Wisconsin, Slapshot informed SPI that the machine did not meet its specifications and was unsuitable for its uses. According to Slapshot, it was prompted to relocate its principal place of business from Royal Palm Beach, Florida to Nesconset, New York approximately three months after the transaction, in October, 1995, because it suffered financial difficulties as a result of this machinery being unacceptable.

Before moving to New York, the plaintiff faxed a letter to the defendant advising it of the address change. From October, 1995 through April, 1996, the parties attempted to resolve their dispute regarding the specifications of the machine, and discussed the possibility of exchanging the machine for a different one or providing plaintiff with a refund of the purchase price. During the course of these negotiations, the parties exchanged faxes, letters and telephone calls between Slapshot's New York office and SPI's Georgia offices. These negotiations were unsuccessful and Slapshot commenced this action, alleging three causes of action: (1) breach of contract by SPI; (2) fraudulent misrepresen-

tations by SPI regarding the equipment sold; and (3) damage to Slapshot's reputation as a result of it not being able to fulfill customers' orders without the machinery it had contracted to purchase from SPI.

## II. DISCUSSION

### A. Personal Jurisdiction Under New York Civil Practice Law and Rules ["CPLR"]

■ Prior to discussing the issue presented by the instant motion, the Court will set forth several general principles which apply to motions challenging personal jurisdiction. If the Court relies on the pleadings and affidavits alone, the plaintiff need only make a *prima facie* showing of jurisdiction in order to defeat the motion to dismiss. *Welinsky v. Resort of World D.N.V.*, 839 F.2d 928, 930 (2d Cir.1988). Moreover, the pleadings and affidavits should be construed in the light most favorable to the plaintiff, and all doubts resolved in its favor.

Personal jurisdiction over a defendant in a diversity action is determined by the law of the forum state (*CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 [2d Cir.1986]; *Arrowsmith v. United Press International*, 320 F.2d 219, 223 [2d Cir.1963] [*en banc*]). As a result, the Court must look to New York's personal jurisdiction statutes, N.Y.CPLR sections 301 and 302, to determine whether the plaintiff has set forth a *prima facie* showing of *in personam* jurisdiction over the defendant (*see Guardino v. American Sav. & Loan Ass'n*, 593 F.Supp. 691, 693 [E.D.N.Y.1984]). "If the exercise of jurisdiction is appropriate under the statute, the court then must decide whether such exercise comports with the requisites of due process.... Because [the Court] believes that the exercise of personal jurisdiction in the instant case is proscribed by the law of New York, [it] does not address the issue of due process." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997).

CPLR Section 301, which confers jurisdiction over the defendant "on causes of action wholly unrelated to acts done in New York," occurs "when the defendant is 'engaged in

such a continuous and systematic course of "doing business" [in New York] as to warrant a finding of its "presence" ' in the jurisdiction" (*Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 198 [2d Cir.] [quotations omitted], *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 [1990]).

■ By contrast, CPLR § 302(a)(1) gives New York personal jurisdiction over a nondomiciliary "if two conditions are met: first, the nondomiciliary must 'transact business' within the state; second, the claim against the nondomiciliary must arise out of that business activity. A nondomiciliary 'transacts business' under CPLR 302(a)(1) when he 'purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.' " *CutCo Industries, Inc. v. Naughton, supra*, 806 F.2d at 365 [citations and quotations omitted]. "No single event or contact connecting the defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." *Id.* (Citing *Sterling National Bank and Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870, 873–74 [2d Cir.1975]; *Longines–Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 15 N.Y.2d 443, 457 n. 5, 261 N.Y.S.2d 8, 209 N.E.2d 68, *cert. denied*, 382 U.S. 905, 86 S.Ct. 241, 15 L.Ed.2d 158 [1965]).

### B. "Transacting Business" Under CPLR § 302(a)(1)

Plaintiff argues that personal jurisdiction is conferred upon this Court over SPI pursuant to New York's Long–Arm statute, CPLR section 302(a)(1), because SPI's actions constituted the "transaction of business" within the State of New York. However, the Court notes that the contract at issue was entered into by a Georgia company and a Florida company, was negotiated between the companies' respective Georgia and Florida offices, involved the delivery of machinery from North Carolina to Wisconsin, and provided that payment was to be made to defendant SPI's Georgia bank account. The original contract between the two nondomiciliary par-

ities was not negotiated in New York, was not made in New York, was not executed in New York, and did not contain a New York choice of law provision.

Acknowledging that the original dealings between the parties had no relationship whatsoever with the State of New York, the plaintiff nevertheless contends that SPI's efforts to resolve the contract dispute by communicating with Slapshot's New York office constitutes "transacting business." Specifically, plaintiff points to the following: (1) a letter dated November 21, 1995 from plaintiff's New York address to SPI stating that the machinery was unacceptable and discussing the possibility of exchanging the equipment or obtaining a refund [Affidavit of Thomas Gerbe ["Gerbe Aff."], Ex. B]; (2) billing statements from Slapshot's telephone supplier, AT & T, dated December 16, 1995, January 16, 1996, March 16, 1996 and April 16, 1996, indicating that forty-five (45) telephone calls were placed from Slapshot's New York office to SPI's Georgia office between November 21, 1995 and April 8, 1996 [Gerbe Aff., Ex. C]; (3) the affirmation of Thomas Gerber, Slapshot's President, stating that during the same period covered by the AT & T billing statements, SPI placed approximately 10 to 12 phone calls to Slapshot's New York office to "discuss the matter and to negotiate a resolution" [Gerbe Aff. ¶ 12]; (4) a letter from Slapshot's New York office to SPI's Georgia office, dated February 2, 1996, seeking to return the machine for a refund [Gerbe Aff., Ex. D]; (5) a facsimile apparently sent from SPI's Georgia office to Slapshot's New York office, dated April 2, 1996, stating that SPI was attempting to negotiate a refund, and that "[w]e have tried to avoid litigation through positive communications . . . [and] hope to resolve this issue within ten days without legal implications" [Gerbe Aff., Ex. E].

Even assuming the truth of plaintiff's affirmation and the supplied documents, and construing the pleadings and affidavits in a light most favorable to the plaintiff, as the Court must do on a Rule 12(b)(2) motion, plaintiff fails to make a prima facie showing that defendant's telephone, mail and facsimile communications with New York concerning a contract that was negotiated and performed elsewhere rise to the level of "purposeful availment" of New York laws. SPI's "contact with New York is deficient in both quality and degree and thereby fails to support section 302(a)(1) jurisdiction. New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York." *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 766 (2d Cir.1983) ("cease and desist" letter sent by nonresident defendant to plaintiff alleging that latter's use of a trademark violated federal copyright and trademark law did not constitute a "transaction of business" within New York sufficient to support the exercise of long-arm jurisdiction over the defendant under § 302[a][1]) (citations omitted); *see also Fiedler v. First City National Bank of Houston,* 807 F.2d 315, 317 (2d Cir.1986) (Bank's three telephone calls and one mailing into New York did not confer personal jurisdiction on the district court to entertain claims by guarantors that they were only secondarily liable on their guarantees); *Mayes v. Leipziger,* 674 F.2d 178 (2d Cir.1982) (letters and telephone calls into New York are not sufficient to confer such jurisdiction).

It is of no moment that the communications concerned the parties' efforts to resolve the contract dispute. As the Second Circuit Court of Appeals noted in *CutCo Industries v. Naughton,* 806 F.2d 361, 367 (2d Cir.1986), "attempts to adjust a dispute as to performance of a contract or to discuss differences under an existing contract have no jurisdiction[al] consequences." (Citing *McShan v. Omega Louis Brandt et Frere, S.A.,* 536 F.2d 516, 518 [2d Cir.1976]). In *CutCo Industries,* the Circuit Court concluded that the nonresident defendant's attempts to renegotiate his contract with the plaintiff by visiting the plaintiff's New York office were "irrelevant" to jurisdictional analysis. Similarly, in *Continental Field Service Corporation v. ITEC International* 894 F.Supp. 151, 154 (S.D.N.Y.1995), Judge Parker concluded that "attempts here to resolve a dispute under a contract made and performed elsewhere do not translate into jurisdictional contacts." (Citing *CutCo,* 806 F.2d at 368). *See also*

*Current Textiles Corp. v. Ava Industries, Inc.,* 624 F.Supp. 819, 821 (S.D.N.Y.1985) ("telephone conversations between litigants inside and outside of the state about the contract at issue will not sustain personal jurisdiction under section 302[a][1] absent additional evidence that the out of state litigant purposefully availed himself of the privilege of conducting activities in New York State"); *General Instrument Corp. v. Tie Manufacturing, Inc.,* 517 F.Supp. 1231, 1232 (S.D.N.Y.1981) ("the contract was already made, and attempts thereafter to compromise or adjust a dispute as to performance are not sufficient to confer *in personam* jurisdiction upon the courts of New York with respect to a pre-existing contract over which no jurisdiction existed prior to the settlement attempts."). Courts of this Circuit have held that even the physical presence of a defendant in New York for the purpose of negotiating a settlement of a contractual dispute is insufficient to support the exercise of *in personam* jurisdiction. *See General Instrument Corp. v. Tie Manufacturing, Inc.,* 517 F.Supp. at 1232; *Cavalier Label Co. v. Polytam, Ltd.,* 687 F.Supp. 872 (S.D.N.Y.1988) (the defendant's visit to New York to discuss the termination of the contract at issue was insufficient to confer jurisdiction over the defendant pursuant to the "transacting business" prong of CPLR § 302[a][1] ). The Court concludes that as to a jurisdictional basis, no significance should be attached to the defendant's attempts to resolve the dispute by communicating with plaintiff's New York office via telephone, mail and facsimile.

The Court has reviewed the cases cited by the plaintiff and finds that they miss the mark. For example, in *Parke–Bernet Galleries, Inc. v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), the defendant:

> initiated the opening of a long-distance line between himself in California and Parke–Bernet in New York [during an art auction conducted by the plaintiff]. He thereby was able to monitor the auction in New York through the ears of the person assigned to assist him, and he effectively 'projected himself into the auction room in order to compete with the other prospective purchasers who were there.' (citation

omitted). The [New York Court of Appeals] made it clear that [the defendant] was subject to jurisdiction in New York [in a dispute over the defendant's refusal to pay for the paintings he successfully bid upon during the auction] not simply because he had telephoned New York, but rather because he thereby purposely positioned himself to participate in the activity going on in New York.

*Mayes v. Leipziger,* 674 F.2d at 184 (discussing *Parke–Bernet).* The present case, by contrast, presents none of the kind of purposeful activity described in *Parke–Bernet.* Moreover, whereas in *Parke–Bernet Galleries,* the defendant's telephone call to New York was the basis of the lawsuit, here, the communications between the parties occurred subsequent to the contract formation, and were merely ancillary to the underlying substance of the suit.

Plaintiff's reliance on *Abbate v. Abbate,* 82 A.D.2d 368, 441 N.Y.S.2d 506 (2d Dept.1981) is equally misplaced. In *Abbate,* the Appellate Division found that the negotiation and execution in New York of a separation agreement between a resident wife and a nondomiciliary husband constituted "transacting business" within the meaning of the long-arm statute. However, in the instant matter, the parties agree that the contract at issue was not negotiated, signed or executed in New York.

This case also is distinguishable from *McGee v. International Life Ins. Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), another case relied on by the plaintiff. There, the Supreme Court found that a California court could exercise personal jurisdiction over the defendant, a Texas insurance company, where: the defendant solicited a reinsurance agreement with a California resident; the offer was accepted in California; and the insurance premiums were mailed from California until the insured's death. In reaching its finding of jurisdiction, the Supreme Court emphasized that California had a "manifest interest" in providing effective redress for its residents when non-resident insurers refuse to pay claims on insurance they have solicited in that State. *McGee,* 355

U.S. at 223, 78 S.Ct. at 199. Here, the Court does not perceive that New York has any interest in this case whatsoever, let alone the "manifest interest" present in *McGee*. First, SPI did not solicit Slapshot's business in New York; in fact, it was plaintiff's Florida office which solicited defendant's business in Georgia. Second, SPI accepted the offer in Georgia. Third, the plaintiff's payment, was wired from plaintiff's Florida office to defendant's Georgia bank account. Fourth, the alleged failure to fulfill the terms of the contract occurred outside New York.

"So far as [this Court is] aware, no court has extended § 302[a][1] to reach a nondomiciliary who never entered New York, who was solicited outside of New York to [deliver equipment] outside of New York, who [delivered] outside of New York such [equipment] as w[as delivered], and who is alleged to have neglected to [deliver adequate equipment] outside of New York." *Mayes v. Leipziger*, 674 F.2d at 185. The Court finds that under these circumstances, the New York courts would not exercise jurisdiction solely on the basis that the Georgia defendant attempted to resolve its dispute with the plaintiff by communicating with the company via telephone, letter and facsimile.

### C. Plaintiff's Request for Additional Discovery on the Issue of Jurisdiction Under CPLR § 302(a)(3): Tortious Conduct Outside New York Causing Injury to Plaintiff Within New York

Plaintiff requests that in the event this Court finds that the defendant did not "transact business" within the State of New York as defined by CPLR § 302(a)(1), the parties be afforded the opportunity to engage in limited discovery on the issue whether the defendant is "doing business" in New York and, hence, is subject to jurisdiction under CPLR § 302(a)(3). That section confers jurisdiction over non-domiciliaries who commit a "tortious act" outside New York, causing injury to persons or property within New York, provided that the tortfeasor either: (1) regularly does or solicits business, engages in persistent conduct, or derives substantial revenue from goods used or consumed or

services rendered, in the State; or (2) expects or should reasonably expect the tortious act to have consequences in New York and derives substantial revenue from interstate or international commerce. In support of its application for an order permitting limited discovery on the issue whether defendant is "doing business" in New York under the statute, the plaintiff simply points to the affirmation of Polly Miller, SPI's Secretary, which indicates that "SPI does occasionally ship packaging machinery into the State of New York ... between one and four times per year." (Affirmation of Polly Miller, ¶ 9). The plaintiff's application suffers from several fatal flaws.

The plaintiff ignores the fact that CPLR § 302(a)(3) contains two threshold requirements that must be met before the Court should even concern itself with the issue whether defendant is "doing business" in New York. Specifically, the statute requires a demonstration that (1) the defendant committed a "tortious act" outside New York; and (2) the "tortious act" caused injury to persons or property within New York. In the absence any briefing on the issue by either party, the Court, in the interests of judicial economy, will nevertheless consider whether the plaintiff has made a threshold showing of the jurisdictional significance of its contentions so as to warrant an order compelling limited discovery on the issue of the defendant's "doing business" in New York.

■ Addressing the first prong of CPLR § 302(a)(3), the Court must decide whether the plaintiff properly has alleged that the defendant committed a "tortious act" outside New York. A breach of contract does not constitute a tortious act under CPLR § 302(a)(3). *See Amigo Foods Corp. v. Marine Midland Bank–New York*, 39 N.Y.2d 391, 396, 384 N.Y.S.2d 124, 127, 348 N.E.2d 581, 583–84 (1976). "[B]y merely alleging a tortious act, [a plaintiff] may not convert a simple breach of contract case into a tort for jurisdictional purposes." *Kulas v. Adachi*, No. 96 CV 6674(MBM), 1997 WL 256957, at *8 (S.D.N.Y. May 16, 1997) (quoting *Electro Magnetic (S) Ltd. v. Sea Cargo Int'l. Inc.*, No. 90 CV 6335, 1991 WL 156371, at *2 (S.D.N.Y. August 7, 1991)). Therefore, the

Court must ascertain whether the plaintiff has properly alleged tort claims of fraud and loss of goodwill.

■ The plaintiff asserts that SPI breached the contract by delivering machinery that did meet the agreed-upon specifications. The plaintiff also alleges that SPI defrauded Slapshot by representing to plaintiff that the machinery was in good working condition, had new electrical wiring inside of it and was equipped with the necessary filling equipment when, in fact, the defendant "knew" that the machinery had no filling equipment, and contained wiring that was "antiquated by industry standards" (Compl. ¶¶ 40–47). According to the complaint, the plaintiff, "in reliance on the representations of defendant, was induced to pay to defendant the sum of $31,800 for said equipment." (Compl. ¶¶ 40–47). The plaintiff further asserts that because of SPI's delivery of inadequate machinery, Slapshot has not been able to produce any alcoholic beverages from August of 1995 until the present and, therefore, has been unable to fulfill any of its contractual obligations to its customers. Thus, the plaintiff alleges, "[a]s a result of defendant's actions, plaintiff's reputation and good will have been permanently damaged" (Compl.¶¶ 48–54).

The Court cannot accept plaintiff's contention that SPI committed a tortious act within the State of New York by making fraudulent misrepresentations in order to induce plaintiff to enter into the contract and thus is subject to jurisdiction under CPLR section 302(a)(3). "The essence of the alleged misstatements is that [SPI] would satisfactorily perform the contract. Thus, plaintiff is merely attempting to transform a breach of contract into a tort for jurisdictional purposes. Such characterizations are not a basis to ground jurisdiction under New York's long arm statute." *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305 (S.D.N.Y.1983); *see also Sudul v. Computer Outsourcing Servs.*, 868 F.Supp. 59, 61–62 (S.D.N.Y.1994) (citations omitted) ("[M]ere allegations of breach of contract do not give rise to claim for fraud or fraudulent inducement."); *Rolls–Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117, 123 (S.D.N.Y. 1996). The Court agrees with Judge Weinstein's observation that:

Accepting plaintiff's theory would have the effect of an unwarranted and unintended extension of "long arm" jurisdiction to almost any contract action where plaintiff was a New York domiciliary. Whether or not the reach would be unconstitutional, it would be contrary to legislative design as revealed in CPLR § 302.

*Stanat Mfg. Co. v. Imperial Metal Finishing Co.*, 325 F.Supp. 794, 796 (E.D.N.Y.1971).

■ Equally untenable is plaintiff's position—to the extent its position is even fleshed out—that its loss of "good will" constitutes a cognizable tort action. Again, to the extent that the plaintiff is alleging that SPI's failure to deliver the goods specified in the contract caused damage to Slapshot's reputation, it is obvious that the gravamen of plaintiff's claim is breach of the sales contract. For the aforementioned reasons, this Court cannot retain jurisdiction over plaintiff's putative tort claims under section 302(a)(3).

■ Even if this Court were to conclude that plaintiff's claims for fraud and loss of good will were sounding in tort, it nevertheless would decline to exercise jurisdiction over SPI because the defendant's alleged activities did not "cause an injury to plaintiff within the State of New York," as is required under CPLR § 302(a)(3). To assert jurisdiction under § 302(a)(3), "the injury within the state must be 'direct, and not remote or consequential.'" *Interface Biomedical Laboratories Corp. v. Axiom Medical, Inc.*, 600 F.Supp. 731, 738 (E.D.N.Y.1985) (quoting *Faherty v. Fender*, 572 F.Supp. 142, 149 [S.D.N.Y.1983]). Thus, the New York State Court of Appeals has held that "residence or domicile of the injured party within the State is not sufficient predicate for jurisdiction, which must be based upon a more direct injury within the State and a closer expectation of consequences within the State than the indirect financial loss resulting from the fact that the injured party resides or is domiciled there." *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 126 (1980). Judge Glasser has noted that in commercial tort actions, the courts have "uniformly held that the mere fact that the

plaintiff resides in New York and therefore ultimately experiences a financial loss there is not a sufficient basis for jurisdiction under § 302(a)(3). (citations omitted). In all of these cases, the courts held that the place of injury was where the defendant conducted the alleged improper sale of goods or services or wrongfully manufactured the goods." *Interface Biomedical Laboratories Corp. v. Axiom Medical, Inc.*, 600 F.Supp. at 738. In this case, the sale of allegedly defective equipment took place between a Georgia Company and a Florida Company and involved the delivery of machinery from North Carolina to Wisconsin. The injury therefore, if any, occurred outside this State. The Court concludes that it cannot assert jurisdiction over SPI under CPLR § 302(a)(3).

Finally, "while the general rule in this Circuit favors limited discovery which may ultimately establish the truth of plaintiff's contentions or may provide a further factual basis for jurisdiction, plaintiff has failed to make a threshold showing of jurisdictional significance of its contentions or any suggestion that defendant is in possession of further facts which may resolve the jurisdictional issue." *Continental Field Service Corp. v. ITEC International*, 894 F.Supp. 151, 152 n. 2.(S.D.N.Y.1995) (citations omitted). The Court is not persuaded—especially in the absence of any argument on the subject by the plaintiff—that discovery would aid the plaintiff is establishing facts that would convince the Court to exercise jurisdiction under CPLR § 302(a)(3). Plaintiff requests discovery solely on the issue of SPI's conduct which amounts to "doing business" in New York. However, the issue is irrelevant, given plaintiff's failure to allege that SPI committed a "tortious act" outside New York which caused injuries to Slapshot in New York.

## III. CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss the complaint for lack of personal jurisdiction over the defendant is granted, and the plaintiff's application for an order directing further discovery is denied.

The complaint is dismissed and the Clerk is directed to close this case.

SO ORDERED.