OPINION OF THE COURT
Acosta, J.
In this appeal we are called on to revisit New York’s long-arm jurisdiction statute and to determine whether a plaintiff can plead a cause of action for unjust enrichment when it has adequately pleaded that an alleged bribery induced a fraudulent agreement. We modify the order of Supreme Court to the extent of reinstating the claims against defendant Abaplus sounding in fraud and unjust enrichment.
Plaintiff, which provides television services to cable and satellite distributors primarily in Spain and Latin America, has its principal place of business in Argentina. Abaplus, which offers programming for television services such as those provided by plaintiff, is incorporated in the British Virgin Islands, and maintains offices and places of business in Miami, Buenos Aires, and Montevideo, Uruguay. Defendant Vargas Distribution (VDI), which was dissolved in August 2006, was a Panamanian corporation, also with offices and its principal place of business in Montevideo. Defendant Arturo Vargas, who owned VDI as well as Abaplus, is a citizen of Uruguay.
On January 29, 2001, plaintiff entered into an agreement with VDI whereby the latter would supply cable programming *92 to plaintiff for the South American market for the years 2001 through 2003. That agreement is not presently litigated, although plaintiff argues that it was linked with a 2002 replacement contract with Abaplus in a manner that demonstrates an ongoing bribery scheme carried out by Abaplus’s principal (Vargas) and plaintiffs former CEO, Claudio Bevilacqua.
On December 16, 2002, plaintiff and Abaplus entered into an agreement replacing the VDI agreement. This agreement is the basis of the Supreme Court ruling and the present appeal. Plaintiff alleged in its complaint that Abaplus was actually part of the Vargas programming sales group, so Vargas remained the party in interest. Plaintiff further alleged that VDI provided the programming until December 31, 2002, which Abaplus continued thereafter, so in plaintiffs view, the entities are obviously related.
The 2002 agreement is written in Spanish; there is no allegation that it was entered into in New York. The parties agreed, however, to submit to the jurisdiction of New. York courts to resolve any disputes arising under the agreement, and that New York law would govern any litigation.
Plaintiff alleged that Vargas and the corporate defendants engaged in a fraudulent scheme involving plaintiffs CEO whereby defendants bribed Bevilacqua to commit plaintiff to paying inflated prices for “inferior programming,” a scheme that was continued under the 2002 agreement. Additionally, Abaplus was alleged to have breached the 2002 agreement by failing to provide plaintiff with the promised programing per year, and also tried to supply plaintiff programming to which Abaplus did not own the distribution rights.
After it terminated Bevilacqua’s employment on January 14, 2004, plaintiff continued an investigation that had been ongoing with respect to certain of Bevilacqua’s activities during his employment. In 2006, plaintiff discovered that its contractual relationships with entities controlled by Vargas, including the present one, which had been negotiated by Bevilacqua and Vargas, had resulted from a kickback scheme.
Specifically, starting in January 2001 (i.e., during the term of the VDI contract), Bevilacqua committed plaintiff to pay for programming at highly inflated prices, and kickbacks were paid into personal bank accounts controlled by Bevilacqua. Bevilacqua utilized a Citibank account in New York, which he had opened in his niece’s name but to which he retained signatory rights, to accept the kickbacks. The niece used that account *93 while she resided in Bevilacqua’s New York apartment, but stopped doing so when she left New York and returned to Argentina in early 2001.
According to plaintiff, it wired $300,000 to VDI’s account at Dresdner Bank Lateinamerika AG, pursuant to the agreement, on July 25, 2001. Plaintiffs investigation uncovered that three weeks later, VDI wired $150,000 from that same account to Bevilacqua’s niece’s Citibank account in New York. On November 13, 2001, plaintiff wired $100,733.11 to VDI’s account at Northern Trust International, which then was credited to a Merrill Lynch account. The next day, VDI wired $50,000 to the Citibank account.
Plaintiff claimed that Bevilacqua maintained total control over negotiations and executed both agreements without involving any of plaintiffs other corporate officers, and that defendants failed to disclose to plaintiff or its shareholders that Bevilacqua had been disloyal to it and had accepted payments to his personal benefit in exchange for binding plaintiff to a commercially unreasonable agreement, and that defendants were part of the fraudulent scheme.
Plaintiff asserted five causes of action against the corporate defendants and Vargas personally: common-law fraud, breach of the implied covenant of good faith and fair dealing (against only Abaplus), unjust enrichment, breach of contract (against only Abaplus) and declaratory judgement (against only Abaplus).
Motions were made by Abaplus and Vargas in November 2007, and by VDI in January 2008, to dismiss the complaint for lack of jurisdiction and, alternatively, for failure to state a cause of action.
They averred that Vargas, a foreign citizen, transacted no business in New York, as manifested by the absence of any purposeful activity in New York bearing a substantial relationship with the transaction underlying the dispute. They further argued that Vargas did not commit a tort within New York State, or a tort outside of New York causing injury in New York. With respect to the fraud claim, defendants argued the alleged wire transfers were made by VDI and not Abaplus, and took place prior to when Abaplus signed the agreement with plaintiff.
The Special Referee’s report, dated August 15, 2008, concluded that neither VDI nor Vargas individually had any contacts with New York that would provide a basis for New York long-arm jurisdiction. The report concluded that just as *94 mailing documents or funds to New York does not rise to the level of activity contemplated as a basis for personal jurisdiction, so too, merely wiring funds into a bank account in New York fails to provide a basis for New York jurisdiction. Nor was there a basis for jurisdiction predicated on tortious conduct on the theory that Bevilacqua’s niece, when she resided in New York, was a conspirator, since there was no allegation that she knew of let alone intentionally participated in any scheme involving kickbacks that funded the Citibank account. Moreover, since defendants did not own or control that bank account, payments into the account did not invoke New York jurisdiction.
With respect to the tort and contract theories asserted in the complaint, the report concluded that allegedly improper wire transfers underlying the fraud claim were made by VDI and not Abaplus, and took place a year before Abaplus entered the subject agreement, and the complaint thus failed to state a cause of action against Abaplus. The report also noted that the implied covenant of good faith and fair dealing is not an independent claim and was encompassed within the breach of contract (and fraud) claims, which also precluded the unjust enrichment claim against Abaplus. In March 2009, Supreme Court adopted the Special Referee’s findings and recommendations. Specifically, the court rejected plaintiffs contention at oral argument that by wiring the funds to the New York account, Vargas and VDI “directed” tortious activities in New York, and that Bevilacqua acted as a coconspirator with Vargas and VDI by receiving those funds in New York. The court further found that plaintiff failed to connect those funds with the subsequent contract with Abaplus. The court also noted that regardless of the prior contractual relations between plaintiff and VDI, the contract presently in litigation was the 2002 agreement between plaintiff and Abaplus, particularly given the timing of the kickback payments to Bevilacqua.
The court dismissed the fraud claim against Abaplus because the complaint failed to connect the alleged bribes involving VDI and Vargas to the Abaplus contract. The court also dismissed the unjust enrichment claim against Abaplus, since there was a valid contract between plaintiff and Abaplus; moreover, the court held that the breach of contract claim subsumed the implied covenant claim against Abaplus.
*95 Claims against Arturo Vargas and VDI
Supreme Court properly dismissed all the claims against VDI and Vargas on jurisdictional grounds. It has long been established that in order to satisfy due process, a defendant who is not physically present in a state must have minimum contacts with the state, thereby availing itself of the protections and benefits of the laws of that state, before the state may exercise in personam jurisdiction over it and thereby subject it to legal process (International Shoe Co. v Washington, 326 US 310 [1945]). Plaintiff has failed to carry its burden of establishing personal jurisdiction over VDI and Vargas under New York’s long-arm statute (see O’Brien v Hackensack Univ. Med. Ctr., 305 AD2d 199 [2003]).
CPLR 302 codifies the basis for in personam jurisdiction in New York against nondomiciliaries. The salient consideration, again, is whether the assertion of jurisdiction comports with due process (LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 216-219 [2000]). Even if a defendant has engaged in purposeful acts in New York, there must also exist a substantial relationship between those particular acts and the transaction giving rise to the plaintiffs cause of action (McGowan v Smith, 52 NY2d 268, 272 [1981]). The greater the distance between the transaction giving rise to the injury and the defendant’s New York contacts, the less likely will there be a basis for New York jurisdiction.
CPLR 302 (a) (1) allows for New York jurisdiction when the defendant transacts any business within the state or contracts anywhere to supply goods or services in the state and the claim arises out of that transaction. This has typically contemplated an ongoing business relationship between the parties, with some New York contacts. The focus is on the contacts between the nonresident defendant and the business centered in New York (Corporate Campaign v Local 7837, United Paperworkers Intl. Union, 265 AD2d 274 [1999]).
CPLR 302 (a) (1) also creates New York jurisdiction over any party whose agent undertakes certain acts. Notably, it must be the defendant’s agent. The plaintiff may not rely on its own activity, or the activity of its agent, as a predicate for jurisdiction over the defendant. By merely accepting funds from, or placing an order with, the defendant, the plaintiffs agent does not become the defendant’s agent (Barington Capital Group v Arsenault, 281 AD2d 166 [2001]). Moreover, claims against a corporate defendant, if jurisdictionally viable, do not provide a basis for personal jurisdiction over a corporate official or em *96 ployee who acts on behalf of the corporation (see Laufer v Os-trow, 55 NY2d 305 [1982] [no personal jurisdiction over company president in individual capacity]).
In the instant action, none of the parties to this litigation has a New York presence, and neither the 2001 contract with VDI nor the 2002 contract with Abaplus called for the delivery of goods or services in New York. The only straw grasped by plaintiff to invoke the jurisdiction of New York courts over VDI and Vargas is the allegation that VDI deposited bribes into a New York bank account purportedly controlled by plaintiffs former agent, which, by inference, were intended to produce a subsequent corrupt 2002 contract with Abaplus, a Vargas-controlled entity.
Preliminarily, there are no allegations that Vargas personally conducted any transaction in New York, notwithstanding his possible corporate,affiliation, so jurisdiction cannot be obtained over him as an individual (Laufer v Ostrow, 55 NY2d 305, supra [1982]).
With respect to the jurisdictional predicate for VDI, notwithstanding the possible fact that it and Abaplus had common ownerships, they were separate entities, so payments by one could not be imputed to the other. Plaintiff argues that Abaplus merely continued the existing corrupt relationship with Bevilacqua, so the New York jurisdictional link with VDI, existing by virtue of its payments to Bevilacqua’s New York account, should extend also to the successor contract with Abaplus.
The principal flaw in this reasoning is that the mere payment into a New York account does not alone provide a basis for New York jurisdiction (Baptichon v Nevada State Bank, 304 F Supp 2d 451 [ED NY 2004], affd 125 Fed Appx 374 [2d Cir 2005]; Daewoo Intl. [Am.] Corp. v Orion Eng’g & Serv., Inc., 2003 WL22400198, 2003 US Dist LEXIS 18696 [SD NY 2003]), especially when all aspects of the transaction occur out of state (Continental Field Serv. Corp. v ITEC Inti., Inc., 894 F Supp 151 [SD NY 1995]), absent more extensive New York banking relating to the transaction in issue (see Indosuez Intl. Fin. v National Reserve Bank, 98 NY2d 238 [2002]). The due process considerations underlying long-arm jurisdiction are thus not invoked. In other words, there is no reasonable basis to conclude that because one defendant made certain payments into a personal bank account allegedly controlled by Bevilacqua in New York, any or all defendants should have expected to be subjected to a lawsuit in New York by plaintiff over a foreign *97 contract providing for foreign services involving parties who are all foreign to New York.
CPLR 302 (a) (2) invokes New York jurisdiction when the defendant has allegedly committed a tortious act in New York. CPLR 302 (a) (3) allows for New York jurisdiction when an out-of-state tort causes injury within New York. Neither of these jurisdictional predicates is satisfied.
To find that a defendant has committed a tortious act in New York, our courts have traditionally required the defendant’s presence here at the time of the tort (Kramer v Vogl, 17 NY2d 27 [1966]; see also Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443 [1965], cert denied sub nom. Estwing Mfg. Co. v Singer, 382 US 905 [1965]), a requirement not satisfied even when the instrument of the tort itself is in New York (Bauer Indus. v Shannon Luminous Materials Co., 52 AD2d 897 [1976] [document containing fraudulent misrepresentations received in New York insufficient]). Moreover, contract claims do not constitute a tortious act within the meaning of the statute (Fantis Foods v Standard Importing Co., 49 NY2d 317, 324 [1980]).
Plaintiffs theory of a conspiracy to perpetrate fraud, which had a New York presence, is unavailing. First, the mere conclusory claim that an activity is a conspiracy does not make it so (Lamarr v Klein, 35 AD2d 248 [1970], affd 30 NY2d 757 [1972]), especially when the complaint fails to establish that the alleged coconspirators knew their act would have an effect in New York (Marie v Altshuler, 30 AD3d 271, 272 [2006]). In any event, the sole strand connecting the putative conspiracy to New York is the Citibank account. Insofar as can be ascertained from the complaint, the legal owner of the Citibank account was Bevilacqua’s niece, about whom there are no allegations, so that there is no basis to conclude that she was a coconspirator. Even the allegation that Bevilacqua actually controlled the account adds no salience in the absence of evidence as to where the deposits were made from, or any consequential results in New York. The 2002 Abaplus contract itself relates to out-of-state performance.
Nor is there a basis to invoke New York jurisdiction on the theory that a tort was committed by defendants out of state that caused an in-state injury. As already noted, contract claims are not torts for such purposes (Fantis Foods, 49 NY2d at 324), leaving only the fraud claim as the potential tort. However, there are no allegations as to where the out-of-state tortious conduct occurred. The situs of the injury, for long-arm purposes *98 under CPLR 302 (a) (3), is where the event giving rise to the injury occurred (Marie, 30 AD3d at 272-273; Hermann v Sharon Hosp., 135 AD2d 682 [1987]). Moreover, for commercial torts causing economic damages, losses within New York will be necessary to establish a jurisdictional predicate. For example, in Fantis Foods, a New York buyer purchased cheese from a Greek supplier, which cargo was allegedly converted by the supplier at sea before it could be delivered for sale to Chicago. The Court held that there was no situs of injury in New York for purposes of long-arm jurisdiction (cf. Sybron Corp. v Wetzel, 46 NY2d 197 [1978] [where a New Jersey company tried to steal trade secrets from a New York manufacturer, causing loss of sales in New York]). Simply put, without any presence, business, contacts or sales in New York, and no sales in New York, plaintiff has not suffered any injury here.
Claims against Abaplus
Supreme Court erred in dismissing the fraud and the unjust enrichment claims against defendant Abaplus, which agreed to jurisdiction in New York.
Plaintiff properly stated a cause of action for fraud against Abaplus. In making such a claim, the circumstances alleging the fraud must be stated in detail (CPLR 3016 [b]). To meet this requirement, a plaintiff must bring forth facts sufficient to permit a reasonable inference of the alleged fraud (see Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486 [2008]). In accepting the facts alleged by plaintiff as true, as we must in the context of a CPLR 3211 (a) (7) motion to dismiss, plaintiff’s amended complaint has alleged with specificity the elements of fraud, namely, “material misrepresentation of fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages” (Art Capital Group, LLC v Neuhaus, 70 AD3d 605, 607 [2010]).
Plaintiff has alleged that Abaplus participated in a scheme with Bevilacqua whereby defendants made improper payments to Bevilacqua, in exchange for which Bevilacqua committed plaintiff to a contract to pay grossly inflated prices for cable television programming. Plaintiff was unaware of the disloyalty of its chief, executive officer, who was harming the company to enrich himself. Defendants, with the assistance of Bevilacqua, allegedly misrepresented to plaintiff the true consideration for the 2001 and 2002 agreements, and according to plaintiff, had it known the truth about the nature of Bevilacqua’s relationship *99 with Vargas, it would not have entered into any agreement with Abaplus.
We disagree with the dissent that the facts of this case fall within the “special facts” doctrine, which holds that absent a fiduciary relationship between parties, there is nonetheless a duty to disclose when one party’s superior knowledge of essential facts renders a transaction without disclosure inherently unfair (see Swersky v Dreyer & Traub, 219 AD2d 321, 327 [1996]). Plaintiff sufficiently pleaded the elements of the fraudulent scheme, i.e., that Abaplus conferred a benefit on plaintiffs unfaithful employee to influence his conduct to the detriment of plaintiff. We note that the fraud cause of action based on plaintiffs bribery-related allegations arises from the common law of torts (see Sardanis v Sumitomo Corp., 279 AD2d 225, 229-230 [2001]; accord Niagara Mohawk Power Corp. v Freed, 265 AD2d 938, 939-940 [1999] [sustaining a fraud cause of action based on alleged bribery by the plaintiffs employee]). We adhere to our prior holding in Sardanis that a private right of action is not implied under the commercial bribery provisions of the Penal Law, and the dissent does not disagree with Sardanis on this point but ignores the plain language of Sardanis that such a private right of action does exist under tort law (279 AD2d at 229-230).
Were the “special facts” doctrine applicable, plaintiffs claim of commercial bribery would nonetheless be viable. Here, if proven as alleged, both plaintiffs former CEO and Abaplus had superior knowledge of essential facts that rendered the contract inherently unfair to plaintiff. Specifically, as noted, plaintiff alleges that Abaplus bribed plaintiffs CEO to commit plaintiff to paying grossly inflated prices for programming, including some to which Abaplus did not even own the distribution rights. The dissent misses the mark by placing plaintiffs former CEO on the opposite end of the contractual agreement with Abaplus. This is because the facts as alleged demonstrate that the CEO’s actions were not for the benefit of his employer, but rather for his own personal benefit and that of Abaplus. We do not believe that his fraudulent acts should be imputed to his employer, who was not aware of the bribery scheme.
Contrary to Abaplus’s argument, the claim of fraud is independent of the breach of contract claim inasmuch as plaintiff alleged that Abaplus breached a duty of reasonable care distinct from its contractual obligations by fraudulently inducing plaintiff to enter agreements (see Niagara Mohawk, 265 AD2d *100 at 939-940). A “defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations” (New York Univ. v Continental Ins. Co., 87 NY2d 308, 316 [1995]).
Supreme Court also erred in dismissing plaintiffs unjust enrichment claim against Abaplus. Contrary to the court’s holding, a claim for unjust enrichment is not duplicative of a breach of contract claim where the plaintiff alleges that the contracts were induced by fraud (Niagara Mohawk, 265 AD2d at 939). In other words, the equitable remedy of unjust enrichment will not be precluded in the event it is determined that the contracts are voided as having been induced by fraud.
Supreme Court correctly dismissed plaintiffs cause of action of breach of the implied covenant of good faith and fair dealing, as subsumed in the breach of contract action. We disagree with the dissent that the breach of implied covenant and breach of contract claims are discrete. Both are based on the same underlying facts (see e.g. Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce, 70 AD3d 423, 426 [2010]).
Accordingly, the order of Supreme Court, New York County (Melvin L. Schweitzer, J.), entered March 31, 2009, which dismissed all claims against VDI and Vargas, and claims sounding in fraud, breach of the implied covenant of good faith and fair dealing and unjust enrichment against Abaplus, should be modified, on the law, the fraud and unjust enrichment claims against Abaplus reinstated, and otherwise affirmed, without costs.