■ AMCAN HOLDINGS, INC., et al., Appellants-Respondents, v CANADIAN IMPERIAL BANK OF COMMERCE, Respondent-Appellant, et al., Defendants. [894 NYS2d 47]—

Order, Supreme Court, New York County (Helen E. Freedman, J.), entered June 17, 2008, which granted defendants' motion to dismiss the complaint to the extent. of dismissing all causes of action against defendants Canadian Imperial Holdings, CIBC World Markets, and CIBC, Inc., and the cause of action for breach of the implied covenant of good faith and fair dealing against defendant Canadian Imperial Bank of Commerce (CIBC), unanimously modified, on the law, the remaining causes of action against CIBC dismissed, and otherwise affirmed, with costs against plaintiffs.

Plaintiff companies are all controlled by one Richard Gray, who, in 2001, approached CIBC to obtain financing for the acquisition of a company called CWD Windows Division (CWD Division), as well as refinancing for the existing debt of Amcan and another company owned by Amcan, B.F. Rich Co. (BF Rich). Gray also sought funding for the continuing operations of CWD Division and BF Rich. More specifically, plaintiffs sought a commitment from CIBC to furnish two separate lines of credit: (1) a revolving credit line to provide working capital, and (2) a nonrevolving term loan.

The parties negotiated a "Draft Summary of Terms and Conditions" (draft summary), outlining the proposed terms of the two credit lines. After additional negotiations, the parties executed a writing entitled "Summary of Terms and Conditions" (summary). Both documents contained a highlighted box at the top of the first page with the following language: "The Credit Facilities will only be established upon completion of definitive loan documentation, including a credit agreement . . . which will contain the terms and conditions set out in this Summary in addition to such other representations . . . and other terms and conditions . . . as CIBC may reasonably require."

The summary itself contained specifics on a number of items, including, inter alia, detailed descriptions of the credit lines, the amount of funding to be provided under each, amortization and interest rates, fees, security, a proposed closing date and definitions of key terms. The borrower was listed as CWD Division and BF Rich.

Under the subheading "Fees," the summary provided for a $500,000 fee to CIBC, payable as follows: $50,000 payable on acceptance of the draft summary, $150,000 payable upon acceptance of this committed offer and $300,000 payable upon the closing of this transaction. It is undisputed that plaintiffs paid the first two installments, which were not refunded by defendants when the deal was terminated.

Under the subheading "Conditions Precedent" were included what was "[u]sual and customary for transactions of this type," such as—for "Initial Funding," the "[e]xecution and delivery of an acceptable formal loan agreement and security . . . documentation, which embodies the terms and conditions contained in this Summary."

Although there is a dispute over what happened next, it appears that prior to the execution of the final loan documents and credit agreement, CIBC discovered Gray had failed to disclose that certain entities he controlled, including Amcan, were subject to a preliminary injunction issued by New York County Supreme Court on October 21, 1996, which prohibited Amcan from assigning BF Rich shares as security for the loan, a condition precedent to closing the deal. Additionally, defendants claim plaintiffs failed to disclose that Gray had been held in contempt for violating the injunction, which contempt was upheld twice on appeal. Plaintiffs argue that defendants were aware of Gray's prior actions but proceeded with the deal in spite of that knowledge. CIBC broke off negotiations and the deal was never consummated.

Six years later, plaintiffs commenced this action, asserting causes of action for breach of contract based on defendants' failure to close the loan, breach of defendants' obligation of good faith and fair dealing, and fraud. Defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7). Defendants argued that the summary was not a binding agreement, but a mere agreement to agree, and that they did not act arbitrarily in breaking off negotiations after learning about the preliminary injunction and contempt orders. Defendants further argued that assuming arguendo that the summary was a binding agreement, plaintiffs failed to state a cause of action because they did not identify provisions of the summary defendants had allegedly breached. Finally, defendants argued that Chariot Management lacked standing to sue, as it was neither a party to, nor a third-party beneficiary of, the summary.

The motion was granted to dismiss against all defendants other than CIBC, holding that they were not parties to any agreement. The court also dismissed plaintiffs' cause of action

against CIBC for breach of good faith and fair dealing, holding this claim duplicative of the breach-of-contract cause of action. In addition, it denied the motion to dismiss the cause of action against CIBC for breach of contract, finding that the circumstances presented at this preliminary stage of the proceedings did not permit a determination as to whether the summary was a binding agreement or merely an agreement to agree. The court also held that the portion of the motion to dismiss, for lack of standing, plaintiff Chariot Management's cause of action for breach of contract was premature.

The claim that defendants breached the implied covenant of good faith and fair dealing was properly dismissed as duplicative of the breach-of-contract claim, as both claims arise from the same facts (*Logan Advisors, LLC v Patriarch Partners, LLC*, 63 AD3d 440, 443 [2009]) and seek the identical damages for each alleged breach (*see Deer Park Enters., LLC v Ail Sys., Inc.*, 57 AD3d 711, 712 [2008]).

The causes of action asserted by Chariot Management against all defendants should have been dismissed for lack of standing. The documents belie plaintiffs' allegation that Chariot Management—which was not identified as a "Borrower," or listed as a signatory to either the summary or the draft credit agreement— was an intended third-party beneficiary of the summary (*see LaSalle Natl. Bank v Ernst & Young*, 285 AD2d 101, 108-109 [2001]).

"In determining whether a contract exists, the inquiry centers upon the parties' intent to be bound, i.e., whether there was a 'meeting of the minds' regarding the material terms of the transaction" (*Central Fed. Sav. v National Westminster Bank, U.S.A.*, 176 AD2d 131, 132 [1991]). Generally, where the parties anticipate that a signed writing is required, there is no contract until one is delivered (*see Scheck v Francis*, 26 NY2d 466, 470-471 [1970]).

Here, both the draft summary and summary documents clearly state the credit facilities "will only be established upon completion of definitive loan documentation," which would contain not only the terms and conditions in those documents but also such "other terms and conditions . . . as CIBC may reasonably require." Although the summary was detailed in its terms, it was clearly dependent on a future definitive agreement, including a credit agreement. At no point did the parties explicitly state that they intended to be bound by the summary pending the final credit agreement, nor did they waive the finalization of such agreement (*see Prospect St. Ventures I, LLC v Eclipsys Solutions Corp.*, 23 AD3d 213 [2005]; *see also Hollinger Digital v LookSmart, Ltd.*, 267 AD2d 77 [1999]).

The parties disagree on whether the draft summary and summary fall into a type I (fully negotiated) or type II (terms still to be negotiated) preliminary agreement, commonly used in federal cases addressing the issue of whether a particular document is an enforceable agreement or merely an agreement to agree (*see Teachers Ins. & Annuity Assn. of Am. v Tribune Co.*, 670 F Supp 491, 498 [SD NY 1987]). However, our Court of Appeals recently rejected the federal type I/type II classifications as too rigid, holding that in determining whether the document in a given case is an enforceable contract or an agreement to agree, the question should be asked in terms of "whether the agreement contemplated the negotiation of later agreements and if the consummation of those agreements was a precondition to a party's performance" (*IDT Corp. v Tyco Group, S.A.R.L.*, 13 NY3d 209, 213 n 2 [2009]).

Here, the summary made a number of references to future definitive documentation, starting with the box on page one of the summary. The fact that the summary was extensive and contained specific information regarding many of the terms to be contained in the ultimate loan documents and credit agreements does not change the fact that defendants clearly expressed an intent not to be bound until those documents were actually executed. As a result, the motion to dismiss the complaint should have been granted in its entirety with respect to CIBC.

Based on the foregoing, there is no need to address the remaining issues raised by the parties on the appeal and cross appeal. Concur—Mazzarelli, J.P., Sweeny, Catterson, Acosta and Abdus-Salaam, JJ. **[Prior Case History: 20 Misc 3d 1104(A), 2008 NY Slip Op 51218(U).]**