*611 This action arises from Emportal’s solicitation of venture capital financing from New York-based StarVest in late 2008. Emportal, a California-based software company, discussed with StarVest the possibility of StarVest purchasing approximately $3.5 million worth of Emportal preferred stock. After conducting some preliminary due diligence, StarVest decided to work alongside another venture capital firm named Leapfrog Ventures (Leapfrog). These firms discussed with Emportal the possibility of providing a total of $7 million in funding in exchange for a combined 40% equity interest in the company. In September 2008, Emportal ceased discussions with StarVest and Leapfrog after selecting another venture capital syndicate to provide funding. That syndicate decided in October 2008 not to proceed with the financing. That same month, StarVest and Leapfrog made it known to Emportal that they remained interested in providing a combined investment of $6.5 million for a total of 65% of shareholders’ equity.
The parties ultimately executed a term sheet consisting of five pages, the last four of which contained a listing of terms and conditions for the investment in Emportal. Significantly, the first page of this document, which was signed by all parties on October 29, 2008, contained the following language: “Binding agreements will be entered into only upon the execution by all parties of the Stock Purchase Agreement and other related documents. This Term Sheet is for discussion purposes only and there is no obligation on the part of any party unless and until a definitive stock purchase agreement is signed by all parties.” The term sheet set November 11, 2008 as a closing date for the transaction, subject to an acceptable financial plan, outstanding obligations of no more than $600,000, and “other diligence as requested by StarVest or Leapfrog.” After this date passed without the transaction closing, the parties continued, via email, to discuss various issues with a view toward finalizing an agreement.
On November 18, 2008, a StarVest representative notified Emportal representatives via email that StarVest had received approval from the partnership to proceed with the investment. Emportal’s attorneys prepared a series of documents necessary to close the deal, including a litigation indemnity agreement, and sent them to StarVest’s counsel. Both law firms were located in California and the documents included choice of law provisions which indicated that California law was to govern.
On November 21, 2008, StarVest’s counsel emailed Emportal’s attorneys changes to the indemnity agreement. A specifically referenced problem concerned a lawsuit a former partner of *612 Emportal’s chairman, Kevin Grauman, filed, alleging that Grauman defrauded him and seeking that the company’s “founders” indemnify new investors.
Three days later, StarVest contacted Emportal and said it needed a “timeout” to continue to evaluate “certain dynamics” of the deal. On December 4, 2008, StarVest advised Grauman that it could not proceed with an investment in Emportal because of concerns about the lawsuit, “radical changes” in the economy and “other aspects of the background check due diligence.”
After a series of what StarVest characterized as “inflammatory” emails from Grauman, accusing it of, among other things, “lost good will and reputation,” StarVest commenced this declaratory relief action in New York, seeking a judgment declaring that Starvest had no obligation to provide funding to Emportal, and that its refusal to invest was not wrongful and caused no actionable harm or injury to Emportal. Starvest also sought a declaration that it was not liable for breach of contract, fraud or any other legal theory.
Emportal commenced an action for damages against StarVest in California, arguing extensively that California was the appropriate forum because it had a greater interest in the case than New York. After a hearing, the California court granted StarVest’s motion for a stay on the ground of inconvenient forum, noting that Emportal could file a cross complaint in the New York action. The court also explicitly rejected Emportal’s forum arguments, stating that “in weighing the public and private factors, there is no clear indication that California is preferable over New York.”
Thereafter, Emportal filed an amended answer in the New York action, asserting nine counterclaims for damages similar to those filed in California, including, inter alia, breach of oral contract, breach of implied covenant of good faith and fair dealing, promissory estoppel, and fraud and negligent misrepresentation. StarVest moved to dismiss the counterclaims, and the court granted that motion.
Dismissal of the breach of contract counterclaims is required where, as here, the parties have agreed that there would be no binding agreement until their execution of a written contract, but no such contract was ever executed (see Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce, 70 AD3d 423, 426-427 [1st Dept 2010], lv denied 15 NY3d 704 [2010]). Emportal’s contention that the term sheet was no longer operable, as it expired as of the closing date, is unavailing. The closing date, as with all points made on the term sheet, was for “discussion *613 purposes only.” There was no “time is of the essence” clause or explicit language that if the transaction was not closed by that date, the deal would fail (cf. Meyers Assoc., L.P. v Conolog Corp., 61 AD3d 547, 548 [1st Dept 2009]). “[T]he concept of freedom of contract includes the ‘[freedom to avoid oral agreements/ a freedom that ‘is especially important when business entrepreneurs and corporations engage in substantial and complex dealings’ . . . We think it preferable to allow sophisticated parties operating in the business world to decide when and how they wish to enter into legally enforceable contracts” (Jordan Panel Sys. Corp. v Turner Constr. Co., 45 AD3d 165, 173-174 [1st Dept 2007]). The result would be no different under California law because “[w]hen it is clear, both from a provision that the proposed written contract would become operative only when signed by the parties as well as from any other evidence presented by the parties that both parties contemplatet ] that acceptance of the contract’s terms would be signified by signing it, the failure to sign the agreement means no binding contract was created” (Banner Entertainment, Inc. v Superior Ct. [Alchemy Filmworks, Inc.], 62 Cal App 4th 348, 358, 72 Cal Rptr 2d 598, 603 [1998]).
Moreover, a claim for breach of the implied covenant of good faith and fair dealing “may not be used as a substitute for a nonviable claim of breach of contract” (Sheth v New York Life Ins. Co., 273 AD2d 72, 73 [1st Dept 2000]; see Starzynski v Capital Pub. Radio, Inc., 88 Cal App 4th 33, 39, 105 Cal Rptr 2d 525, 529 [2001]).
The court also properly dismissed Emportal’s tort counterclaims for promissory estoppel, negligent misrepresentation and fraud. Where a term sheet or other preliminary agreement explicitly requires the execution of a further written agreement before any party is contractually bound, it is unreasonable as a matter of law for a party to rely upon the other party’s promises to proceed with the transaction in the absence of that further written agreement (see 511 9th LLC v Credit Suisse USA, Inc., 69 AD3d 497 [1st Dept 2010]; Jordan Panel Sys. Corp., 45 AD3d at 179-180; Prestige Foods v Whale Sec. Co., 243 AD2d 281, 281-282 [1st Dept 1997] [dismissing promissory estoppel, fraud and negligent misrepresentation counts because plaintiffs’ claim of reasonable reliance was “flatly contradicted” by the letter agreements stating that neither party had any legal obligations until both had executed an underwriting agreement (internal quotation marks omitted)]). The result would not be different under California law (see J.B. Enters. Intl., L.L.C. v Sid & Marty Krofft Pictures Corp., 2003 WL 21037837, *4, 2003 US Dist LEXIS 7668, *10 [CD Cal, Mar. 3, 2003, No. CV-02-7779 CBM (SHX)]).
*614 We have considered defendant’s remaining contentions and find them to be without merit. Concur — Andrias, J.P., Sweeny, Catterson, Moskowitz and Manzanet-Daniels, JJ.