**Oppenheimer & Co. Inc. v Vivani Med. Inc.**

2025 NY Slip Op 32119(U)

June 12, 2025

Supreme Court, New York County

Docket Number: Index No. 650421/2024

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 49M

-------------------------------------------------------------------------X

OPPENHEIMER & CO. INC.,

Plaintiff,

- v -

VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL
PRODUCTS INC., and THINKEQUITY LLC,

Defendants.

-------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 650421/2024 |
| **MOTION DATE** | 04/03/2024, 05/03/2024 |
| **MOTION SEQ. NO.** | MS 001 MS 002 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 23, 37, 39

were read on this motion to/for                                          DISMISS                                          .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 38, 41

were read on this motion to/for                                          DISMISSAL                                          .

    This action arises from a contract by which plaintiff Oppenheimer & Co. Inc. (Oppenheimer) would locate an investor to fund a proposed merger between defendant Vivani Medical Inc. f/k/a Second Sight Medical Products Inc (Vivani) and non-party Pixium Vision SA (Pixium). The merger fell through allegedly because defendant ThinkEquity LLC (ThinkEquity) found a better deal for Vivani. Plaintiff commenced this suit against Vivani for Count 1 – breach of contract, Count 2 – breach of the implied covenant of good faith and fair dealing, and Count 4 – breach of contract as a third-party beneficiary. Plaintiff asserts a claim against ThinkEquity for Count 3 – tortious interference with contract. Both defendants separately move to dismiss the claims as against them. For the reasons below, Vivani's motion (MS 001) is partially granted only as to Counts 2 and 4. And ThinkEquity's motion (MS 002) is granted on Count 3, the sole claim against it.

### Background[1]

    Plaintiff is a New York-based investment bank and financial services company offering investment banking, financial advisory services, capital market

---

[1] The following facts are drawn from the Complaint, its exhibits, and the documents in support of this motion. Facts from the complaint  and are assumed true for purposes of this motion.

**650421/2024  OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL PRODUCTS INC. ET AL**
**Motion No.  001 002**

**Page 1 of 16**

1 of 16

[* 1]

services, asset management, wealth management, and related products and services (NYSCEF # 1, Complaint ¶ 3). Defendant Vivani (referred to as Second Sight or the Company in the submissions) is a California-based biopharmaceutical company that develops medical devices and implants (*id.* ¶ 4). Defendant ThinkEquity is a New York-based boutique investment bank and describes itself as "a broker-dealer registered with the SEC and FINRA" and "a full service brokerage firm involved in retail stock brokerage sales and investment banking" (NYSCEF # 36, ThinkEquity mol at 1). And non-party Pixium is a company that was set to merge with defendant Vivani (Complaint ¶ 2).

*Pre-Plaintiff History*

ThinkEquity provides documentary evidence that allegedly shows its true history with defendant Vivani, which preceded plaintiff's involvement and which is not reflected in the Complaint. ThinkEquity claims that in April 2020, "more than [seven] months prior to" the existence of plaintiff's and Vivani's agreement, ThinkEquity and Vivani had entered into an "exclusive investment banking agreement" pursuant to which ThinkEquity became "the sole bookrunner for a firm commitment underwriting of a proposed registered public offering of [Vivani] common stock" (IB Agreement) (ThinkEquity mol at 2, citing NYSCEF # 26, ThinkEquity IB Agreement). ThinkEquity claims that it also entered into an Underwriting Agreement later that month (*id.* at 3-4, citing NYSCEF # 27, underwriting agreement).

ThinkEquity claims that both the IB agreement and the Underwriting Agreement contain provisions giving ThinkEquity a "Right of First Refusal" on "any new financing transaction for a period of [twelve] months from the closing on any offering . . . and the sole right to determine whether . . . other broker dealer shall have the right to participate in such offering . . ." (*id.* at 3 citing NYSCEF # 26 ¶ 16). As relevant here, the IB Agreement's Right of First Refusal states:

The Underwriting Agreement's Right of First Refusal states:

"7.3 Right of First Refusal. [ThinkEquity] shall have an irrevocable right of first refusal (the "Right of First Refusal"), for a period of twelve (12) months after the date the Offering is completed, to act as sole and exclusive investment banker, sole and exclusive bookrunner, sole and exclusive financial advisor, sole and exclusive underwriter and/or sole and exclusive placement agent, at the Representative's sole and exclusive discretion, for each and every future public and private equity and debt offering, including all equity linked financings (each, a "Subject Transaction"), during such twelve (12) month period, of the Company, or any successor to or subsidiary of the Company, on terms and conditions customary to the Representative for such Subject Transactions. For the avoidance of any doubt, the Company shall not

650421/2024 OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT
MEDICAL PRODUCTS INC. ET AL
Motion No. 001 002

Page 2 of 16

2 of 16

retain, engage or solicit any additional investment banker, book-runner, financial advisor, underwriter and/or placement agent in a Subject Transaction without the express written consent of the Representative."

(*id.* at 3-4, citing Underwriting Agreement § 7.3).

ThinkEquity claims that in November 2020, Vivani and non-party Pixium started discussing a potential merger between them (the Proposed Merger) (*id.* at 4-5). As explained in the Complaint, "[t]he anticipated transaction involved Pixium contributing to [Vivani] all of Pixium's assets and liabilities in connection with certain technologies related to the treatment of blindness, with Pixium to thereafter become the controlling shareholder of the combined company" (Complaint ¶ 22).

ThinkEquity claims that around this time, Vivani "requested ThinkEquity to sign a Limited Waiver Agreement of ThinkEquity's Right of First Refusal for the merger financing" (Limited Waiver) (MS 2 - NYSCEF # 36, ThinkEquity mol at 5). The Limited Waiver, dated November 1, 2020, would allow plaintiff Oppenheimer to "act as investment banker" and locate an investor to fund the potential merger (*id.*; *see also* NYSCEF # 31, Limited Waiver).

Under the Limited Waiver, ThinkEquity waives "any and all Consents Rights and Right of First Refusal that ThinkEquity may have solely in connection with the Combination Activities and any transactions contemplated thereby," apart from rights regarding an irrelevant spin-off (Limited Waiver § 1). "Combination Activities" is defined as four categories of tasks:

> "(i) rais[ing] additional working capital in a private placement of equity securities of the Company [Vivani] to accredited investors (the 'Fund Raising'); (ii) issu[ing] equity securities of the Company to Pixium as consideration for its contribution of certain assets (the 'Contribution'); (iii) issu[ing] equity securities of the Company to shareholders of Pixium in connection with an exchange offer (the 'Offer'); and (iv) transfer[ring] certain of its assets to a subsidiary (the 'SpinCo') and dividend shares of SpinCo to shareholders of the Company (the 'Spin-Off')."

(*id.* at Second Whereas Clause).

*The Agreement between Plaintiff and Vivani and Pixium*

The Complaint picks up where ThinkEquity leaves off. On November 5, 2020, Vivani and Pixium entered into a placement agency agreement with plaintiff by which plaintiff would locate an investor to fund the Proposed Merger (the Agreement) (Complaint ¶¶ 1, 25-28). Per the Agreement, Vivani and Pixium agreed

650421/2024 OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL PRODUCTS INC. ET AL
Motion No. 001 002

Page 3 of 16

3 of 16

to retain and compensate plaintiff as their "sole-lead placement agent" relating to "the Placement" for the purposes of the "Business Combination" (*id.* ¶ 29; NYSCEF # 2, Agreement at 1).

The Agreement contains several relevant defined terms. First, the Agreement defines the "Business Combination" to be the Proposed Merger—"the contemplated business combination [] between [Vivani] and Pixium" (Agreement at 1). Second, the Agreement defines "the Placement" as the "proposed private placement [] of [Vivani's] securities . . . to a limited number of accredited investors . . . in connection with" the Proposed Merger—in other words, the method in which the Proposed Merger would be funded (*id.*) Third, the Agreement defines "Company Parties" as Vivani and Pixium "collectively" (*id.*). Fourth, the "Term" of the Agreement is defined as beginning "the date of this Agreement" (November 5, 2020) and ending the earlier of either "the consummation of the Placement" or "the termination of this Agreement" (*id.* § 10).

Under § 1 of the Agreement, "[plaintiff]'s involvement in the Placement is strictly on a reasonable best efforts basis; the consummation of the Placement will be subject to, among other things, market conditions" (*id.* § 1; Complaint ¶ 6).

As for plaintiff's fee, § 2 of the Agreement provided that Vivani "shall pay [plaintiff]" a fee of 6.5% of the gross proceeds raised in the Placement, "subject to a minimum Fee of $1.75 million" (Complaint ¶ 31; Agreement § 2). Vivani was to pay "upon the consummation" of the Placement, provided that the Placement was "in connection with the Business Combination" and was consummated either during the Term or within six months thereafter (the Tail Period) (Agreement § 2).

As most relevant here, the end of § 10 of the Agreement states:

"During the Term, *the Company Parties* agree that they will not negotiate with any other underwriter, placement agent, arranger or investor relating to *a possible public or private offering or placement of the Company Parties' securities (including the Placement)* or other financing without *first consulting and receiving the approval of [plaintiff]*, other than the Excluded Financings."

(*id.* § 10 [emphasis added]). As will become clear below, the parties raise disputes about nearly all of the emphasized language in italics.

Finally, the Agreement contains several references to ThinkEquity. For example, the Agreement states in the first paragraph that plaintiff "understands that the Company Parties may separately engage ThinkEquity . . . as a co-manager for the Placement to serve an entirely passive role" (*id.*). The first paragraph further states that plaintiff and ThinkEquity's responsibilities "are several and not joint," and that "the Company Parties will not engage any placement agents other than

**650421/2024  OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL PRODUCTS INC. ET AL
Motion No.  001 002**

**Page 4 of 16**

4 of 16

[* 4]

[plaintiff] and Think Equity in connection with the Placement" (*id.*). Additionally, the Company Parties also promised "that their services contemplated hereby do not violate any obligations owed by the Company Parties to any third party (including, without limitation, Think Equity)" (*id.*). Lastly, plaintiff "agree[d] that $300,000 of the Fee shall be paid to [ThinkEquity as] Think Equity's sole compensation in connection with the Placement in connection with the Business Combination" (*id.* § 2; Complaint ¶ 40).

*Memorandum of Understanding and Plaintiff's Performance[2]*

Approximately two months after execution of the Agreement, Vivani and Pixium formalized the terms of their anticipated business combination with a Memorandum of Understanding dated January 5, 2021 (the MOU) (Complaint ¶ 45). Pursuant to the MOU, Vivani agreed to raise a minimum of $25 million "in a private placement of [Vivani's] equity securities . . . in order to 'finance the Combined Company's working capital and general corporate purposes'" (*id.* ¶ 46, quoting MOU at § 2.1). The MOU also "prohibited either [Vivani] or Pixium from engaging in any sale of their respective securities in a manner unrelated to their fundraising activities in furtherance of the business combination" (*id.* ¶ 48, citing MOU at § 4.1). The next day, Vivani and Pixium each issued press releases publicly announcing their anticipated business combination (*id.* ¶¶ 50-51).

Plaintiff ultimately held up its end of the Agreement by arranging a private sale of Vivani's stock by non-party investor Hudson Bay. On March 7, 2021, Vivani, Pixium, and Hudson Bay executed a (mostly) non-binding term sheet memorializing the contemplated sale (Term Sheet) (*id.* ¶ 53; NYSCEF # 3, Term Sheet at 1 [revealing name of investor as Hudson Bay]). Pursuant to the Term Sheet, Hudson Bay agreed to purchase $25 million of Vivani's stocks, the amount Vivani was required to raise under the MOU (Complaint ¶ 54; Term Sheet at 1).

Despite being mostly non-binding, the Term Sheet did contain a few "Binding Terms" (Term Sheet at 4 [Binding Terms section]). Most relevantly, the Term Sheet set out a binding 90-day "Exclusivity Period" during which Vivani was expressly prohibited from participating in any competing sale of its stock other than with Hudson Bay (*id.*; Complaint ¶ 56). If Vivani "nonetheless consummates or executes any term sheet or agreement" with a third party during the Exclusivity Period, the Term Sheet allowed Hudson Bay to recover $2,500,000 (Term Sheet at 4 [Binding Terms section]). The relevant language states:

> "From the date of the execution of this term sheet by the Company [Vivani] to the date that is 90 days after the date of this term sheet (such period, the 'Exclusivity Period'), the Company and/or its agents shall not directly or indirectly solicit, initiate, consider or encourage

---

[2] The Memorandum of Understanding is not included in plaintiff's submission.

650421/2024   OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT          Page 5 of 16
MEDICAL PRODUCTS INC. ET AL
Motion No. 001 002

5 of 16

any proposal or offer from any other party relating to any financial transaction having an effect or result similar to the transaction contemplated herein and the Investors shall have the exclusive right to negotiate and execute definitive documentation embodying the terms set forth herein and other mutually acceptable terms . . . if during the Exclusivity Period the Company nonetheless consummates, or executes any term sheet or agreement with respect to, a financing with another third party, Hudson Bay shall . . . receive $2,500,000 from the Company."

(*id*.).

*Vivani Announces a Different Deal With Investors Located by ThinkEquity*

Vivani claims that the Complaint omits "key events that occurred in March 2021, leading to the collapse of the potential Business Combination" (NYSCEF # 9, Vivani mol at 6). Specifically, Vivani claims that its stock went up and that ThinkEquity then gave Vivani "an unsolicited higher value offer for its shares . . . from a group of investors located by ThinkEquity" (*id*. at 5-7). Vivani claims that "[g]iven the volatile market, Vivani had to act quickly" (*id*. at 7).

Thus, on March 23, 2021, Vivani and Hudson Bay terminated the Term Sheet pursuant to a termination agreement and limited waiver (the Termination Agreement) (*id*. at 8; Complaint, Termination Agreement at 1). Vivani claims that under the Termination Agreement, Hudson Bay "waive[d] any and all rights it may have under the terms of the Term Sheet with respect to the Proposed Financing" and "agree[d] to terminate the Term Sheet" for payment of $80,000 by Vivani (Vivani mol at 8; Complaint § 1).

In the meantime, Vivani and ThinkEquity entered into a separate placement agency agreement (Complaint ¶ 59). Vivani claims it also entered "Subscription Agreements" with the investors located by ThinkEquity (Vivani mol at 7).

The next day, on March 24, 2021, Vivani publicly announced its intended sale of 4,650,000 shares of its stock to ThinkEquity's group of investors via a private placement for "the total sale price of $27,900,000" (the Competing Placement) (Complaint ¶ 58). Vivani did not previously notify, consult, or receive approval from plaintiff despite the language in § 10 of the Agreement (*id*. ¶¶ 58, 59). On March 26, 2021, Vivani issued a press release announcing that the Competing Placement sale had closed (*id*. ¶ 62).

ThinkEquity acted as Vivani's sole placement agent for the Competing Placement, with no involvement from plaintiff, Pixium, or Hudson Bay. The Complaint alleges that the Competing Placement did not constitute one of the Excluded Financings defined in the Agreement (*id*. ¶¶ 59, 65). ThinkEquity

**650421/2024   OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL PRODUCTS INC. ET AL
Motion No.  001 002**

**Page 6 of 16**

6 of 16

[* 6]

purportedly received $1,813,500 in fees as a result of the Competing Placement pursuant to a separate placement agency agreement between Vivani and ThinkEquity on March 23, 2021 (*id.* ¶ 64).

On April 2, 2021, Vivani purported to withdraw from the MOU with Pixium (*id.* ¶ 75). Pixium would go on to sue Vivani in "Paris Commercial Court," ultimately winning damages of 2.5 million euros (*id.* ¶¶ 78-80).

After learning of the Competing Placement via Vivani's press releases and public announcements, plaintiff sent Vivani an invoice dated April 1, 2021 (the Invoice) totaling $1,860,683.41 (*id.* ¶¶ 69-73; NYSCEF # 3, Pltf's Invoice). The Invoice's total represented the Agreement's 6.5% placement fee on the $27,900,000 Competing Placement sale price plus ($1,813,500), plus $43,964 in outside legal expenses and another $3,219.41 in out-of-pocket expenses plaintiff incurred in carrying out its obligations under the Agreement (Complaint ¶ 69).

Vivani refused to pay plaintiff in connection with the Invoice or Agreement. Instead, on April 6, 2021, Vivani responded to the Invoice by sending a notice to plaintiff and Pixium purporting to terminate the Agreement effective April 9, 2021 (the Termination Notice) (*id.* ¶ 73; NYSCEF # 4, Apr. 9, 2021 Termination Notice).

Plaintiff filed this lawsuit on January 26, 2024, against Vivani and ThinkEquity. As against Vivani, plaintiff alleges that Vivani breached § 10 of the Agreement for failing to consult or receive approval from plaintiff before engaging in the Competing Placement (*id.* ¶¶ 86-96 [Count 1]); the implied covenant of good faith and fair dealing for working with another placement agent (*id.* ¶¶ 97-104 [Count 2]); and the Hudson Bay Term Sheet's Binding Terms for negotiating with ThinkEquity's investors during the 90-day Exclusivity Period on the theory that plaintiff is a third-party beneficiary of the Term Sheet (*id.* ¶¶ 114-129 [Count 4]). As against ThinkEquity, plaintiff asserts a claim for tortious interference with the Agreement for working to arrange the Competing Placement (*id.* ¶¶ 105-113 [Count 3]). For all claims, plaintiff seeks the 6.5% fee on the Competing Placement as damages (*id.* ¶¶ 96, 104, 113, 129).

Vivani first argues that the breach of Agreement claim should be dismissed because plaintiff failed to allege a breach or damages (Vivani mol at 9-16). Vivani claims § 10 does not give plaintiff any right of first refusal or "option" to serve as placement agent for all future placements and is in any event an indefinite provision that cannot be enforced (*id.* at 9-14). Vivani asserts that honoring the Agreement "would have imposed an impossible choice on Vivani's Board between breaching its fiduciary duties to its shareholders versus complying with the Agreement" (*id.* at 14-15). Vivani also argues that plaintiff cannot recover "reasonable fees and expenses" (*id.* at 16). As for the breach of the covenant of good faith and fair dealing claim, Vivani primarily argues that this claim is duplicative of breach of contract (*id.* at 17-18). Finally, Vivani argues that the breach of the Term

650421/2024  OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL PRODUCTS INC. ET AL
Motion No. 001 002

Page 7 of 16

7 of 16

[* 7]

Sheet should be dismissed because plaintiff is not an intended third-party beneficiary of the Term Sheet (*id.* at 18-19).

As for ThinkEquity, it succinctly argues that the tortious interference with contract claim against it must be dismissed because the complaint fails to allege all essential elements in that ThinkEquity had a superior right of refusal and pre-existing relationship with Vivani (MS2- NYSCEF # 36, ThinkEquity mol at 7-10).

### Legal Standard

Defendant Vivani seeks to dismiss Counts 1 and 2 pursuant to CPLR 3211(a)(1) and CPLR 3211(a)(7); Count 4 pursuant to CPLR 3211(a)(1), CPLR 3211(a)(3) for lack of standing, CPLR 3211(a)(5) for release or waiver to sue, and CPLR 3211(a)(7). Defendant ThinkEquity seeks dismissal of Count 3 pursuant to CPLR 3211(a)(1) and CPLR 3211(a)(7).

On a motion to dismiss pursuant to CPLR 3211 (a)(7), the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference," and assess whether "plaintiff has stated a claim cognizable at law" or, if the claim is cognizable, whether "plaintiff has failed to assert a material allegation necessary to support the cause of action" (*Siegmund Strauss, Inc. v E. 149th Realty Corp.*, 104 AD3d 401, 403 [1st Dept 2013]; *see Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 AD3d 128, 135 [1st Dept 2014]). Significantly, "whether a plaintiff . . . can ultimately establish its allegations is not taken into consideration in determining a motion to dismiss" under CPLR 3211 (a)(7) (*Phillips S. Beach LLC v ZC Specialty Ins. Co.*, 55 AD3d 493, 497 [1st Dept 2008], *lv denied* 12 NY3d 713 [2009]; *see EBCI, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]). When documentary evidence is submitted in support of a motion to dismiss, "the standard morphs from whether the plaintiff stated a cause of action to whether it has one" (*Basis Yield Alpha Fund*, 115 AD3d at 135).

A motion to dismiss pursuant to CPLR 3211(a)(1) will be granted "only where the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *Amsterdam Hospitality Group, LLC v Marshall-Alan Assoc., Inc.*, 120 AD3d 431, 433 [1st Dept 2014]). Facts and legal conclusions that are "flatly contradicted by documentary evidence [] are not presumed to be true or accorded every favorable inference" (*Morgenthow & Latham v Bank of New York Co., Inc.*, 305 AD2d 74, 78 [1st Dept 2003] [internal citation and quotation omitted]). Moreover, "affidavits, which do no more than assert the inaccuracy of plaintiffs' allegations, may not be considered, in the context of a motion to dismiss, for the purpose of determining whether there is evidentiary support for the complaint ... and do not otherwise conclusively establish a defense to the asserted claims as a matter of law" (*Tsimerman v Janoff*, 40 AD3d 242, 242 [1st Dept 2007]).

**650421/2024   OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT**      Page 8 of 16
**MEDICAL PRODUCTS INC. ET AL**
**Motion No.  001 002**

[* 8]                                                 8 of 16

Vivani raises CPLR 3211(a)(7) and (a)(5) to argue that plaintiff has no standing to bring a claim as an intended third-party beneficiary in the fourth cause of action.

The three claims against Vivani (MS 001) will be addressed first followed by the one claim against ThinkEquity (MS 002).

## DISCUSSION

### Count 1 - Breach of the Agreement by Vivani

Under New York law, to plead a cause of action for breach of contract, a plaintiff must allege: (1) a contract exists, (2) plaintiff performed under the contract, (3) defendant breached its contractual obligations, and (4) defendant's breach resulted in damages (*34-06-73, LLC v Seneca Ins. Co.*, 39 NY3d 44, 52 [2022]). There is no real dispute that the Agreement is a valid contract or that plaintiff performed by arranging for investor Hudson Bay to enter the Term Sheet. The only real questions are whether Vivani breached § 10 of the Agreement and whether plaintiff adequately alleged damages resulting from this breach.

Section 10 of the Agreement states that "the Company Parties agree that they will not negotiate with any other . . . placement agent . . . relating to a possible public or private offering or placement of the Company Parties' securities (including the Placement) or other financing without first consulting and receiving the approval of [plaintiff]" (Agreement § 10). Plaintiff reads this language to mean Vivani must receive plaintiff's approval before negotiating any sale of its securities, regardless whether it relates to the Proposed Merger with Pixium.

In contrast, Vivani reads the language to be limited *solely* to the Proposed Merger given that it specifies "the Company Parties" collectively and given the contract's larger purpose of effectuating the Proposed Merger. Vivani responds that the phrases "Company Parties" and "they" in § 10 means that it applies *only* to alternative placements of Vivani *and* Pixium's securities together, not Vivani's individually (Vivani mol at 11-12).

In any event, it is true that the term "Company Parties" refers to both Vivani and Pixium collectively. But Vivani's reading of § 10 as limited to situations involving both Vivani and Pixium together and not individually is unclear. The phrase – "the Company Parties agree" – does not imply that they agree only to the extent that they are acting together –it means each individual company agrees. In that vein, relevantly, the MOU, which was signed after the Agreement, includes a clause that "prohibited either [Vivani] or Pixium from engaging in any sale of their respective securities in a manner unrelated to their fundraising activities in furtherance of the business combination" (MOU at § 4.1).

**650421/2024 OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL PRODUCTS INC. ET AL**
**Motion No. 001 002**

Page 9 of 16

9 of 16

Vivani next argues that § 10 is an unenforceable "agreement to agree" because it contains "no terms at all" as to plaintiff's right to approve other sales – no parameters for approval, no discussion of timing, and no consequences for violating this term (Vivani mol at 12-13). Vivani's argument presents questions about the scope of plaintiff's power and rights. However, "[b]efore rejecting an agreement as indefinite, a court must be satisfied that the agreement cannot be rendered reasonably certain by reference to an extrinsic standard that makes its meaning clear" (*Cobble Hill Nursing Home, Inc. v Henry and Warren Corp.*, 74 NY2d 475, 483 [1989]). "The conclusion that a party's promise should be ignored as meaningless 'is at best a last resort'" (*id.*, quoting *Cohen & Sons v Lurie Woolen Co.*, 232 NY 112, 114 [1921]). As long as an agreement contains "all the essential terms of the contract," it will be found to be enforceable even if there are aspects left to future agreement (*see Conopco, Inc. v Wathne Ltd.*, 190 AD2d 587, 588 [1st Dept 1993]).

Neither party offers much legal support on whether the "approval" language in § 10 constitutes an agreement to agree. Vivani cites to *Sonenshine Partners, LLC v Duravant LLC*, but that case is distinguishable because it involved an agreement that "merely provide[d plaintiff] with the opportunity to act as a financial advisor based on terms to be negotiated later" and failed to "delineate the scope of [the] role, the types of investment bank services . . . or the fees associated with any transaction" (191 AD3d 567, 568 [1st Dept 2021]). Plaintiff cites to *Melbourne Leasing Co. v Jack LaLanne Fitness Centers, Inc.*, but that case merely states without analysis that "the provision of the lease requiring the landlord's *approval* of the tenant's plans for the alterations did not render Article 64 an unenforceable 'agreement to agree'" (211 AD2d 765 [2d Dept 1995] [emphasis added]).

The approval language in § 10 does not turn the provision into an unenforceable agreement to agree. The Agreement as a whole contains most of the relevant terms: the purpose of the contract; the services that plaintiff will provide; the amount plaintiff will be paid upon a successful merger; and Vivani and Pixium's respective duties. The thrust of Vivani and Pixium's duties appear to be payment and exclusivity: they will not negotiate with other placement agents or make other deals without seeking plaintiff's approval. The details of the approval are not essential; what is clear is that plaintiff will be consulted first.

Additionally, Vivani's argument is weakened by the fact that they made no effort to talk to plaintiff first. Within the span of a few weeks, Vivani cancelled the Term Sheet and the Proposed Merger with Pixium and announced that it was merging with Hudson Bay which ThinkEquity found, all without ever once consulting plaintiff (or even Pixium). This is a breach even if there are ambiguities about how plaintiff may give its approval. Plaintiff, therefore, adequately alleges Vivani breached § 10 of the Agreement by failing to consult or get approval from plaintiff to merge with the investors located by ThinkEquity.

650421/2024   OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL PRODUCTS INC. ET AL
Motion No. 001 002

Page 10 of 16

10 of 16

Vivani's last argument is that honoring the Agreement would have put Vivani's board into an "impossible choice" between their fiduciary duties to shareholders and their contractual duties to plaintiff (Vivani mol at 14-15). If there is any persuasive logic to this argument, Vivani does not make it here. Vivani offers no reason that adhering to the agreement is at odds with one's fiduciary duty to shareholders. Notably, by not complying with the Agreement, Vivani finds itself embroiled in two suits – the instant case and the case brought by Pixium in which Pixium prevailed.

As for damages, Vivani disputes that the breach resulted in actual damages. Vivani first argues that the damages are speculative because there is no solid link between the alleged breach—"Vivani's failure to notify [plaintiff]"—and the damages caused by Vivani's choice to withdraw from the Proposed Merger. Vivani argues that there is nothing to indicate that had Vivani actually notified plaintiff, the Proposed Merger would have gone forward. Vivani further argues plaintiff was retained for the limited purpose of effectuating the Placement and the non-binding Term Sheet, both of which were always subject to Vivani's final approval or rejection. Vivani claims that it is a stretch for Oppenheimer to allege damages and recovery for the 6.5% fee on the Term Sheet Placement or the Competing Placement.

Vivani's argument has some merit in that the damages here are caused by Vivani forgoing the Proposed Merger entirely, not by Vivani failing to tell plaintiff about ThinkEquity's Competing Placement. Ultimately, given that the standard on a motion to dismiss is to make all inferences in favor of the plaintiff, the issue of damages, is insufficient to defeat the motion.

Plaintiff's First Cause of Action for breach of the Agreement survives.

**Count 2: Breach of Implied Covenant of Good Faith and Fair Dealing by Vivani**

Under New York law, every contract contains an implied covenant of good faith and fair dealing which prevents one party from acting in a way that deprives the other of the benefits of the contract (*see 511 West 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002] ["In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance"]). However, a claim based on the implied covenant must be dismissed if it duplicates a breach of contract claim, *i.e.*, if it "arises from the same facts and seeks the same damages" as a contract claim (*Mill Financial, LLC v Gillett*, 122 AD3d 98, 104 [1st Dept 2014], citing *Amcan Holdings, Inc. v Canadian Imperial Bank of Com.*, 70 AD3d 423, 426 [2010]).

Here, the breach of covenant claim is duplicative of the breach of Agreement claim. Plaintiff alleges that Vivani destroyed and prejudiced plaintiff's right to receive the fruits of the Agreement by arranging and carrying out the Competing

650421/2024   OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT          Page 11 of 16
MEDICAL PRODUCTS INC. ET AL
Motion No. 001 002

11 of 16

Placement with ThinkEquity (Complaint ¶¶ 98-103). As Vivani points out, working with ThinkEquity is the same conduct alleged to have breached § 10 of the Agreement. Further, plaintiff seeks to recover the same damages in both claims. (Vivani mol at 17).

Plaintiff does not dispute that both claims are based on breach of § 10 but counters that the implied covenant claim includes something "more." Specifically, plaintiff claims the implied covenant claim is also based on Vivani's "active sabotage of the [Proposed Merger] and Placement contemplated in the Agreement, the MOU, the Term Sheet, and its effectuation of the Competing Placement" (pltf's mol at 21). But these additional facts do not change the heart of the claim: Vivani breached the Agreement by working with ThinkEquity.

Plaintiff's Second Cause of Action for breach of the implied covenant of good faith and fair dealing must therefore be dismissed as duplicative of the breach of the Agreement claim.

### Count 4 - Breach of the Term Sheet as a Third-Party Beneficiary by Vivani

Plaintiff alleges that Vivani breached the Term Sheet by negotiating with ThinkEquity during the 90-day Exclusivity Period. Plaintiff alleges that it can bring this claim despite not being a signatory to the Term Sheet because it was a "third-party beneficiary" (Complaint ¶¶ 119-120). Vivani argues that plaintiff is not an intended third-party beneficiary (Vivani mol at 18-19).

To state a third-party beneficiary claim, a plaintiff must plead: "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for its benefit, and (3) that the benefit to it is sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate it if the benefit is lost" (*Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173 [2011] citing *Mendel v Henry Phipps Plaza W., Inc.*, 6 NY3d 783, 786 [2006]). "Only an intended beneficiary of a contract may maintain an action as a third party; an incidental beneficiary may not" (*Artwear, Inc. v Hughes*, 202 AD2d 76, 81-82 [1st Dept 1994]).

Vivani cites to *Artwear* for the proposition that a third-party can only be an intended beneficiary if it appears "that no one other than the third party can recover if the promisor breaches the contract' or the contract language should otherwise clearly evidence 'an intent to permit enforcement by the third party'" (*id.* [internal citations omitted]). However, the First Department has called the *Artwear* standard "outdated"; the only requirement now is a "clear intention to confer the benefit of the promised performance" (*PT. Bank Mizuho Indonesia v PT. Indah Kiat Pulp & Paper Corp.*, 25 AD3d 470, 471 [1st Dept 2006], citing *State of California Pub. Employees' Retirement Sys. v Shearman & Sterling*, 95 NY2d 427, 434-435 [2000]). Still, "[a]bsent clear contractual language evincing such intent, New York

[* 12]

courts have demonstrated a reluctance to interpret circumstances to construe such an intent" (*LaSalle Nat. Bank v Ernst & Young LLP*, 285 AD2d 101, 108-109 [1st Dept 2001]; *see e.g. Alfonso v Trucar Leasing Corp.*, 225 AD3d 401, 402 [1st Dept 2024] [affirming dismissal where there was "no language . . . evincing an intent to permit [plaintiff] to seek enforcement"]).

Here, there is no evidence or allegation to support plaintiff being an intended beneficiary. The Term Sheet does not contain express or implied terms allowing plaintiff to enforce it nor is there language that would imply plaintiff is an intended beneficiary (*see Alfonso*, 225 AD3d at 402). Plaintiff is not even named or referenced in the Term Sheet or Termination Agreement. Additionally, the Term Sheet by its terms provides a remedy for breach solely to Hudson Bay, and Hudson Bay has already secured a payment of $80,000 in exchange for a waiver of its rights (*see* Termination Agreement § 1). Plaintiff offers no other evidence to demonstrate that the benefit to it was meant to be anything more than incidental. Plaintiff is not an intended beneficiary.

But, even if plaintiff were an intended beneficiary, Hudson Bay's termination of the Term Sheet and waiver of all claims pursuant to the Termination Agreement bars plaintiff's claim. "[A] third-party beneficiary, whose rights are derivative, is subject to the same defenses as are available to the contracting party" (*Artwear*, 202 AD2d at 82). The Termination Agreement "waive[d] any and all rights and claims [Hudson Bay] may have under the Terms of the Term Sheet" (Termination Agreement § 1). As such, plaintiff has no greater rights than Hudson Bay and, by virtue of the payment and waiver, Vivani's contractual obligations to Hudson Bay have already been discharged. Plaintiff is therefore precluded by the Termination Agreement from pursuing this claim.

Plaintiff's claim as a third-party beneficiary against Vivani is dismissed under CPLR 3211(a)(7) and (a)(5), respectively for lack of standing and waiver.

**Count 3 - Tortious Interference with the Agreement by ThinkEquity (MS 002)**

Finally, plaintiff asserts that ThinkEquity tortiously interfered with the Agreement by working with Vivani to arrange and effectuate the Competing Placement (Complaint ¶¶ 105-113).

ThinkEquity first argues that this claim should be dismissed if the breach of contract claim is also dismissed (MS 2 - NYSCEF # 36, ThinkEquity's mol at 9). This argument fails given the above finding that the breach claim survives.

ThinkEquity next argues that the Complaint fails to allege that ThinkEquity intentionally procured Vivani's breach of contract and that any interference was justifiable because ThinkEquity had superior rights (*id.* at 8). Specifically, ThinkEquity claims it had a superior and continuing Right of First Refusal to do

650421/2024   OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT          Page 13 of 16
MEDICAL PRODUCTS INC. ET AL
Motion No. 001 002

[* 13]                                                          13 of 16

future financings for Vivani pursuant to the IB Agreement that pre-dated the Agreement. ThinkEquity claims that its IB Agreement is sufficient justification that provides a complete defense to the claim of tortious interference (*id.* at 10). Plaintiff responds that ThinkEquity waived any pre-existing Right of First Refusal it may have had by executing the Limited Waiver (MS 2- NYSCEF # 38, pltf's mol at 14; NYSCEF # 31 – Limited Waiver at § 1).

Here, accepting the Complaint's allegations as true and drawing all reasonable inferences in plaintiff's favor, the tortious interference claim must be dismissed. Notably, ThinkEquity had a pre-existing relationship with Vivani as shown by the two April 2020 agreements giving ThinkEquity the right of first refusal and the Limited Waiver adjusting that right (*see* NYSCEF #s 26-27, 31).

Plaintiff argues that the Limited Waiver fully waived ThinkEquity's right of first refusal. But plaintiff's argument overreads the document. The Limited Waiver at most indicates ThinkEquity allowed Vivani to retain plaintiff for the purpose of the Proposed Merger with Pixium. Specifically, § 1 of the Limited Waiver waived ThinkEquity's right of first refusal only with respect to "Combination Activities" (NYSCEF # 31 § 1). "Combination Activities" is defined in the Second Whereas clause to include four separate activities including fundraising, giving Pixium and its shareholders securities, and spinning off a subsidiary, all "in furtherance" of the merger negotiations with Pixium (*id.* at Second Whereas clause). Together, § 1 and the Second Whereas clause indicate that ThinkEquity waived its right of first refusal only with regards to the Proposed Merger with Pixium, not with any other potential merger.

Plaintiff knew this going in. The Agreement acknowledges ThinkEquity's preexisting right to work with Vivani and even sets out payment to ThinkEquity for the Placement. For example, the Agreement specifically states that "the Company Parties will not engage any placement agents other than [plaintiff] *and Think Equity* in connection with the Placement" (NYSCEF # 2 at 1 [emphasis added]). The Agreement also specifies that the engagement of and performance by plaintiff of the contemplated services "do not violate any obligations owed by the Company Parties to any third party (including, without limitation, *Think Equity*)" (*id.* [emphasis added]). Vivani was allowed to work with ThinkEquity without breaching the Agreement.

Thus, ThinkEquity's motion to dismiss Count 3 for tortious interference with the Agreement is granted (MS 003), and the complaint is dismissed as against ThinkEquity.

650421/2024   OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT
MEDICAL PRODUCTS INC. ET AL
Motion No.  001 002

Page 14 of 16

[* 14]

14 of 16

## Conclusion

For the foregoing reasons, it is hereby

ORDERED that defendant Vivani Medical Inc. f/k/a Second Sight Medical Products Inc.'s (Vivani) motion to dismiss plaintiff's First, Second, and Fourth Causes of Action (MS 001) is granted in part to the extent that the Second Cause of Action for breach of the implied covenant of good faith and fair dealing and the Fourth Cause of Action for breach of the Term Sheet contract are dismissed, and denied in part as to the First Cause of Action for breach of contract; and it is further

ORDERED that defendant ThinkEquity LLC's motion to dismiss plaintiff's Third Cause of Action (MS 002) is granted in its entirety, and the Complaint is dismissed against defendant ThinkEquity LLC; and it is further

ORDERED that defendant Vivani shall e-file its answer to the remaining First Cause of Action for breach of contract within 20 days of entry of this order; and it is further

ORDERED that the remaining parties (plaintiff and Vivani) shall appear for a preliminary conference on August 20, 2025, at 12:30 PM via Microsoft Teams, with link to be sent by the court; and it is further

ORDERED that prior to the scheduled preliminary conference, the parties shall meet and confer regarding a stipulated preliminary conference order (templates available via hyperlink in Part Rule III.B. of the Part 49 Practices and Procedures); and it is further

ORDERED that should the parties agree on a proposed discovery schedule, they will circulate a proposed preliminary conference order at least one day prior to the preliminary conference; and it is further

ORDERED that if the parties do not agree on a proposed discovery schedule, each party will circulate a proposed schedule and note any areas of disagreement in a letter, at least one day prior to the preliminary conference; and it is further

ORDERED that the Clerk of the Court is directed to enter judgment dismissing in favor of defendant ThinkEquity LLC; and it is further

ORDERED that the caption is amended to reflect dismissal of defendant ThinkEquity LLC and shall read as follows:

**650421/2024  OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL PRODUCTS INC. ET AL
Motion No.  001 002**

Page 15 of 16

15 of 16

-------------------------------------------------------------------X

OPPENHEIMER & CO. INC,

Plaintiff,

- v -

VIVANI MEDICAL INC. F/K/A SECOND SIGHT MEDICAL
PRODUCTS INC.,

Defendant.

-------------------------------------------------------------------X

and it is further

ORDERED that defendants shall serve a copy of this order with notice of
entry on plaintiff and the Clerk of General Clerk's Office and the County Clerk, who
are directed to mark their records to reflect the change in the caption; and it is
further

ORDERED that such service upon the General Clerk's Office and the County
Clerk shall be made in accordance with the procedures set forth in the Protocol on
Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible
at the "E-Filing" page and on the court's website).

This constitutes the Decision and Order of the court.

| 6/12/2025 | | | | MARGARET A. CHAN, J.S.C. | |
|-----------|---|---|---|---|---|
| DATE | | | | | |
| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | | |
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER | |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE | |

650421/2024  OPPENHEIMER & CO. INC. vs. VIVANI MEDICAL INC. F/K/A SECOND SIGHT
MEDICAL PRODUCTS INC. ET AL
Motion No.  001 002

Page 16 of 16

16 of 16